Stephen R. Bruce
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013   SB-1240



**FILED**

NOV 2 9 20__

AT 8:30 . . . . . . . . . . . . .
**WILLIAM T. WALSH**
**CLERK**

**RECEIVED**

NOV 2 9 2001

AT 8:30
WILLIAM T. WALSH                M
CLERK

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY (NEWARK)

| | |
|---|---|
| PHILLIP C. ENGERS,  WARREN J. MCFALL, DONALD G. NOERR, and GERALD SMIT individually and  on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T and AT&T MANAGEMENT PENSION PLAN,<br><br>Defendants. | 98-CV-3660 (NHP)<br>THIRD AMENDED CLASS ACTION COMPLAINT with DEMAND FOR JURY TRIAL |

## THIRD AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs, complaining of the Defendants, aver:

### ADDRESSES OF NAMED PARTIES

1.      The Plaintiffs' addresses are:

Phillip C. Engers
3607 My Ladys View Ct.
Monkton, MD 21111-1920

Warren J. McFall
12 Wilshire Run
Scotch Plains, NJ 07076-2841

Donald G. Noerr
718 Coleman Place
Westfield, NJ 07090-4315

Gerald Smit
14 Sarah Court
Bridgewater, NJ 08807

2.      The Defendants' addresses are:

AT&T Corp.
295 North Maple Avenue
Basking Ridge, NJ  07920

AT&T Management Pension Plan
East Tower, Room 821
One Speedwell Avenue
P.O. Box 1954
Morristown, NJ  07962-1954

## JURISDICTION AND VENUE

3.      Plaintiffs invoke the jurisdiction of this Court pursuant to the Employee

Retirement Income Security Act of 1974 as amended, and the Age Discrimination in

Employment Act of 1967 as amended.

4.      Venue is proper in this Court in that two of the Plaintiffs reside in this

District and the Defendants reside or may be found in this District.  The Defendant

Pension Plan is also administered from this District.

## JURY TRIAL

5.      Plaintiffs demand a trial by jury under the United States Constitution,

Fed.R.Civ.P. 38(a), the federal Age Discrimination in Employment Act of 1967, 29

U.S.C. § 626(c), and the New Jersey Law Against Discrimination.

2

## THE PARTIES

6.     Plaintiffs are management employees of AT&T who were participants in the AT&T Management Pension Plan as of December 31, 1996. The Plaintiffs reside at the addresses given above. Plaintiff Phillip Engers was born in October 1948 and is currently age 50. Warren McFall was born in August 1938 and is currently age 60. Donald Noerr was born in March 1942 and is currently age 57. Gerald Smit was born in June 1950 and is currently age 49. The members of the proposed class reside throughout the United States and in foreign countries and on information and belief number in the tens of thousands.

7.     On information and belief, Defendant AT&T Corp. ("AT&T) is a business corporation organized and existing under the laws of the State of New York. AT&T is qualified to do business in New Jersey and does business in New Jersey.

8.     Defendant AT&T is an "employer" within the meaning of the Age Discrimination in Employment Act of 1967 as amended and the Employee Retirement Income Security Act of 1974 as amended.

9.     Defendant AT&T Management Pension Plan (the "Plan") is an employee benefit plan, as defined at Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and, more particularly, it is, in pertinent part, an "employee pension benefit plan", as defined at ERISA Section 3(2)(A), 29 U.S.C. § 1002(2)(A). The administrative offices of the Defendant Plan are in Morristown, New Jersey.

10.     Defendant AT&T functions as the "plan administrator" for the AT&T Management Pension Plan within the meaning of ERISA. Through the AT&T

3

Employees' Benefit Committee, Defendant AT&T functions as a fiduciary for the

AT&T Management Pension Plan within the meaning of ERISA.

## CLASS ACTION ALLEGATIONS

11.     Plaintiffs bring this action as a class action in accordance with Federal

Rule of Civil Procedure 23 to resolve disputes under the Employee Retirement

Income Security Act of 1974 as amended and under the Age Discrimination in

Employment Act of 1967 as amended.  Judicial economy dictates resolving all issues

as a single action in accordance with Federal Rule of Civil Procedure 23(b).

12.     Plaintiffs bring this action as a class action on behalf of AT&T

management employees who have participated in the AT&T Management Pension

Plan.  The proposed class is defined as any and all persons who:

1.  Are former or current AT&T management employees,

2.  Are currently over age 40,

3.  Participated in the AT&T Management Pension Plan on December 31, 1996
    and on or after the January 1, 1998 date on which the Pension Plan was
    converted to a cash balance design.

The proposed class covers all participants in the AT&T Management Pension Plan

currently over age 40 and who have not earned or will not earn any additional

pension benefits from one or more years of employment under AT&T's new cash

balance pension plan.

13.     On information and belief, the proposed class numbers in the tens of

thousands and is so numerous that joinder of all members is impracticable.

14.     There are common questions of law and fact affecting the rights of

Plaintiffs as employees of Defendant. The claims of the named class representatives are typical of the claims of the class. The named class representatives are all members of the class and will fairly and adequately protect the interests of the class. This action is best maintainable as a class action because Defendant has acted and/or refused to act on grounds generally applicable to the class the Plaintiffs represent, thereby making appropriate final injunctive and other equitable relief in favor of Plaintiffs and the class. In addition, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudication that would establish incompatible standards of conduct for Defendant.

15.    With respect to the classwide claims for monetary relief under the Age Discrimination in Employment Act, the ADEA requires that members of the proposed class affirmatively opt into the suit after notice is given. 29 U.S.C. § 626(b) (incorporating by reference 29 U.S.C. § 216(b) of the Fair Labor Standards Act); see Lusardi v. Xerox Corp., 99 F.R.D. 89, 91-93 (D.N.J. 1983).

## STATEMENT OF FACTS

16.    AT&T established the AT&T Management Pension Plan in October 1980 as a system-wide defined benefit plan for AT&T employees (up to the end of 1983 the plan's name was the "Bell System Management Pension Plan"). Before 1980, AT&T and the former Bell Operating Companies had each sponsored separate pension plans. The establishment of the AT&T Management Pension Plan consolidated and unified those pension plans. Since its establishment, the AT&T Management Pension Plan has offered participants annuities at retirement

determined under a formula based on years of participation in the plan, times a percentage of compensation in a specified pay base averaging period (the "old" formula).

17.     On information and belief, AT&T stopped accruing benefits under the previous Plan formula effective December 31, 1996, for certain purposes and effective July 31, 1997, for other purposes.

18.     On November 10, 1997, AT&T distributed a brochure to Plan participants announcing a change in its benefit formula to a new formula known as a "cash balance" formula (the "cash balance formula" or features).

19.     Pursuant to the "cash balance" formula, participants were assigned initial Cash Balance Accounts.  The initial Cash Balance Accounts set up for participants were far less than the value of the accumulated annuities earned under the "old" formula.  The Cash Balance Accounts are hypothetical accounts, that is, separate individual accounts have not actually been set up for each participant as with a 401(k) or other defined contribution plan that are equal in total to the plan's assets.

20.     AT&T nominally credits the hypothetical Cash Balance Account of each participant with two components on an annual basis.  The first is a percentage of a participant's salary referred to as the "pay credit."  The second component is interest on the participant's hypothetical Account Balance which, after a short-term introductory rate of 7%, will compound at the rate of 4% until payment of pension benefits, whether a participant continues in AT&T's employment or not.

21.     The new formula effects two changes that may not be obvious on its face. The first is that retirement benefits are now based on year-by-year compensation rather than average compensation in a final pay base averaging period.  A second change is that undiscounted retirement benefits at age 55 are eliminated.   These changes significantly reduced the rate of future accruals.

22.     The brochure that AT&T distributed on November 10, 1997, announcing the "new" formula did not disclose that the "new" formula masks a reduction in future benefit accruals.

23.     Transition provisions for the cash balance plan provide that participants are not unconditionally entitled to their hypothetical Cash Balance Accounts, but will receive the "greater of" the accumulated pension benefits to which they were already eligible or the amount hypothetically calculated for the new Cash Balance Account. As a result of how the initial Cash Balance Account was calculated and this transition provision, older employees earn no additional retirement benefits for a number of years beyond those to which they are already eligible under the defined benefit plan's retirement provisions.

24.     When AT&T adopted a resolution about the cash balance formula on April 16, 1997, AT&T knew that employees within 7 years of retirement eligibility would not earn any additional benefits from the cash balance formula because of the transition features that AT&T was implementing.  AT&T knew that for some older workers, their cash balance accounts would not "move ahead of the old plan" for 13 years.

7

25.     The cash balance formula and transition features were designed for AT&T by Actuarial Sciences Associates ("ASA"). ASA is a benefits consulting firm that was wholly owned by AT&T until July 1998, at which time AT&T sold it to ASA's management and employees. In a November 1998 article in the publication Compensation and Benefits Review, Michael J. Gulotta, president of ASA, and Harold W. Burlingame, AT&T's executive vice-president for Human Resources, explained the benefit calculations for older AT&T employees under the cash balance feature and transition provisions:

> "When 47-year-old mid career employees projected the value of their annuities - if they were to retire at age 55 - they found they were coming up short [that is, the benefits under the old plan were greater than the cash balance account]. They hadn't miscalculated - this was a feature of the cash balance plan.
>
> ". . . . AT&T encouraged employees to examine the figures beginning at about age 60 - when cash balance moves ahead of the old plan."

26.     On information and belief, AT&T adopted a resolution in a closed-door meeting on April 16, 1997, that contained some concepts of the "new" cash balance feature and transition provisions, but AT&T did not adopt Plan amendments on that date.

27.     As late as February 17, 1999, AT&T stated in a letter to an attorney that the documentation of the "new" cash balance feature and transition provisions was not available and that the Plan Document reflecting the "new" cash balance amendments was still in the process of being prepared.

## FIRST CLAIM FOR RELIEF: Age Discrimination in Pension Benefit Freeze

28.    The statements of the previous counts are hereby included as if set forth at length.

29.    The Plaintiffs and the members of the proposed Plaintiff class are over 40 years of age.  The Plaintiffs and the members of the proposed Plaintiff class are in the protected class under the federal Age Discrimination in Employment Act of 1967 as amended and the New Jersey Law Against Discrimination.

30.    The Age Discrimination in Employment Act ("ADEA") prohibits discrimination against any individual with respect to compensation, including compensation in the form of pension benefits, because of the individual's age. The ADEA does not permit age-based pay differences; "a lower pension for an older worker is equivalent to a lower salary for the same work." Quinones v. City of Evanston, 58 F.3d 275, 278 (7th Cir. 1995).

31.    Age discrimination is tested on the basis of the individual's current compensation.  An employer cannot avoid a finding of age discrimination in current compensation on the basis that an older worker's accumulated compensation or benefits are higher than that of a younger worker.

32.    The ADEA's "bona fide employee benefit plan" exception exempts certain bona fide employee benefit plans from scrutiny for age discrimination.

33.    The "bona fide employee benefit plan" exception only applies where the actual cost incurred or actual amount of payment made on behalf of an older worker

is not less than that incurred on behalf of a younger person when the tests in 29 C.F.R. 1625.10 are applied.

34.  On or about November 1997, AT&T implemented the above-described cash balance features and transition provisions and informed Plaintiffs that changes had been made to the pension plan in which they participated. AT&T's previous defined benefit plan offered valuable retirement benefits, including undiscounted early retirement benefits, for eligible employees. Older employees who were eligible for early retirement had valuable accumulated retirement benefits.

35.  In making the transition to the cash balance plan, Defendant AT&T made changes that freeze the amount of the retirement benefits that Plaintiffs will receive for many years at the previously accumulated levels.

36.  Defendant used a transition formula or design based on age to effectuate this freeze. No younger, recently hired employee experiences a benefit freeze. All recently hired, younger employees experience annual increases in their pensions.

37.  The transition provisions of the cash balance plan effect the freeze of older workers' pensions by providing that participants will receive the "greater of" the accumulated defined benefits to which the employees were already eligible or the amount computed under the new cash balance feature.

38.  As a result of this transition provision and the low level at which AT&T set the initial Cash Balance Accounts, older employees earn no additional benefits for a number of years beyond the benefits to which they were already entitled under the defined benefit plan's retirement provisions.

39.     Plaintiffs will realize no increase in the amount of their pensions for seven or more years.  During those years the value of Plaintiffs' pensions will actually decrease due to the effects of inflation.

40.     The "greater of" formulation in the transition provisions discriminates on the basis of age by providing that older workers who are eligible for early retirement earn no additional benefits under the cash balance plan in the current year, the near-term and the long-term.  The "greater of" provision in the transition provisions is a subterfuge for providing much lower cash balance benefits for older workers than those provided to younger workers.

41.     The transition provisions of AT&T's cash balance plan can be contrasted with provisions in which the amounts due under a new cash balance plan start at zero and add to the accumulated benefits which employees had already earned under the previous defined benefit plan.  AT&T could have avoided discrimination on the basis of age by providing that older workers would earn additional benefits under the cash balance plan on the same basis as younger employees and that those benefits would be added to the accumulated benefits to which they were already eligible.

42.     AT&T's transition provisions are like those involved in cases in which older employees who were retirement eligible have been denied severance benefits. The courts have declared this discriminatory practice to be unlawful.  In this case, employees who are retirement eligible have been denied additional current compensation in the form of additional cash balance benefits because of the "greater of" formulation in the cash balance plan's transition rules.

11

43.     During the years in which the amount of the older workers' pensions does not increase, Defendant incurs no cost for Plaintiffs' pensions while at the same time Defendant incurs the cost of younger employees' pensions.

44.     Following AT&T's implementation of the cash balance plan with its transition provisions, the actual costs incurred on behalf of older workers are less than those incurred on behalf of younger persons when the test in 29 C.F.R. 1625.10 is applied.   The actual payments made to older workers under the new cash balance plan are also less than those incurred on behalf of younger persons.

45.     In designing the transition provisions from the old pension plan to the new cash balance plan, Defendant deliberately treated Plaintiffs differently because of age.

46.     Defendant's actions discriminate against Plaintiffs because of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) and 29 U.S.C. § 626(b).   Defendant's actions also discriminate against Plaintiffs in violation of the New Jersey Law Against Discrimination.

47.     As required by 29 U.S.C. § 626(d), a representative of the class filed a timely charge of age discrimination on February 9, 1998, on behalf of himself and other workers in the protected age group with the Equal Employment Opportunity Commission more than 60 days prior to commencement of this action.   The EEOC was not able to resolve the controversy and issued a letter to the Plaintiff dated May 18, 1998 and received May 20, 1998, advising that it was unable to resolve the controversy as described and that a lawsuit may be filed against the respondent

12

within 90 days from receipt of the notice.  Plaintiffs filed this action on a timely

basis on August 5, 1998.

## SECOND CLAIM FOR RELIEF: Age Discrimination in Contingent Payment of New Cash Balance Benefits Based on Previously Accumulated Pensions

48.    The statements of the previous counts are hereby included as if set forth at

length.

49.    As previously stated, on or about November 10, 1997 Defendant informed

Plaintiffs that changes had been made to the pension plan.  Among the changes

Defendant purported to make was to set up Cash Balance Accounts for each

employee.

50.    The Cash Balance Account was set at an amount far less than the actuarial

equivalent of the previous accumulated pension.

51.    Defendant purport to make periodic additions to the cash balance account,

but receipt of those additions is contingent on the amount of the participant's

accumulated pension benefits under the prior defined benefit plan being less than the

Cash Balance Account.

52.    Defendant froze benefits under the previous benefit formula as of

December 31, 1996, for certain purposes and effective July 31, 1997, for other

purposes.  According to the transition provisions of the cash balance pension plan,

Plaintiffs can take the greater of the accumulated frozen benefits or the Cash Balance

Account on retirement, but not both.

53.     Because AT&T has set the initial Cash Balance Accounts at a low value, it takes many years for the cash balance to move ahead of the value of the Plaintiffs' accumulated pension benefits before the changes. Because of the contingency in the "greater of" formulation, Plaintiffs are entitled to no cash balance benefits for seven or more years.

54.     Younger, newly hired employees are entitled to receive benefits from the new cash balance pension plan without contingency.

55.     Defendant has deliberately treated Plaintiffs differently because of age.

56.     During the years in which cash balance benefits are contingent on the "greater of" formulation, Defendant incurs no cost for Plaintiffs' pensions while at the same time Defendant incurs costs for the younger employees' pensions.

57.     Defendant's actions discriminate against Plaintiffs due to age under the Age Discrimination in Employment Act of 1967 as amended and the New Jersey Law Against Discrimination.

**THIRD CLAIM FOR RELIEF: Improper, Untimely and Inadequate ERISA Section 204(h) Notice**

58.     As alleged above, AT&T had not adopted actual Plan amendments containing the cash balance feature and transition provisions before November 10, 1997, or even before February 17, 1999. AT&T implemented the "new" cash balance feature and transition provisions effective January 1, 1997. AT&T has to date not notified Plan participants of a significant reduction in the rate of future accruals.

14

59.     By implementing the reduction before adoption of the actual amendments and without providing notice of a significant reduction in the future rate of accruals at least 15 days before the amendments' effective date, AT&T violates ERISA Section 204(h), 29 U.S.C. § 1054(h), which requires that adoption of the amendments precede notice and that notice of the reduction precede implementation by at least 15 days.

60.     Under Third Circuit precedent, exhaustion of claims procedures is not required for statutory ERISA claims.   Exhaustion is, moreover, futile in this case because correspondence with the Plaintiffs and AT&T's Answer maintains that its cash balance plan does not violate the law.  A May 29, 1998 letter from Brian M. Byrnes, the AT&T official responsible for "pension matters," states "there is nothing further to discuss .... [T]his letter concludes the Company's contact with you on this subject outside of any legal process you may determine to undertake." Thus, even if Plaintiffs' claim was not a statutory ERISA claim, it would be futile to file an internal claim with company officers whose position is already staked out.

**FOURTH CLAIM FOR RELIEF: Failure to Maintain Plan Pursuant to Written Instrument**

61.     By implementing the "new" cash balance formula without a written Plan Document, AT&T violated ERISA Section 402, 29 U.S.C. § 1102 ("Establishment of plan"), which requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument."

## FIFTH CLAIM FOR RELIEF: Breach of Fiduciary Duty

62.    By implementing the "new" cash balance formula without a written Plan

Document, AT&T violated ERISA Section 404, 29 U.S.C. § 1104 ("Fiduciary

duties"), which requires, in pertinent part, that "a fiduciary shall discharge his duties

with respect to a plan solely in the interest of the participants and beneficiaries and ...

(D) in accordance with the documents and instruments governing the plan ...."

## SIXTH CLAIM FOR RELIEF:  Misleading Summary Plan Description

63.    On information and belief, AT&T distributed a Summary Plan Description

("SPD") of the Plan, as amended by the "new" cash balance feature and transition

provisions, in 1998 to some employees.  The SPD, however, does not disclose that

the "new" features:

(a)    significantly reduce the rate of future benefit accruals;

(b)    cause older participants to earn no additional benefits beyond those

already earned;

(c)    use conversion factors to compute the initial Cash Balance that are not

based on the most valuable annuity offered under the "old" formula;

(d)    base benefits on year-by-year salary, whereas the "old" formula based

them on compensation in a final pay base averaging period; and

(e)    do not offer undiscounted retirement benefits at age 55.

In addition, illustrative examples in the SPD intentionally omit comparisons of

benefits under the "old" and the "new" formulas.

64.    AT&T's SPD is not "written in a manner calculated to be understood by

the average plan participant," and is not "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan," in violation of Section 102 of ERISA, 29 U.S.C. § 1022.

65.     AT&T's SPD was also not distributed to employees in a manner reasonably calculated to ensure actual receipt by the employees.   The Plaintiffs did not receive the aforementioned SPD until AT&T filed the same as an exhibit in this action in December 1998.

## SEVENTH CLAIM FOR RELIEF: Breach of Fiduciary Duty to Keep Beneficiaries Informed

66.     AT&T's failure to disclose and its deceptive or uninformative disclosures to Plan participants and beneficiaries of the disadvantages of the "new" cash balance features and transition provisions, compared to the "old" defined benefit plan, do not comply with its fiduciary duties to keep trust beneficiaries fully informed, in violation of ERISA Section 404, 29 U.S.C. § 1104.

## EIGHTH CLAIM FOR RELIEF: Intentional Interference with Attainment of Benefits

67.     Defendant intentionally designed the comparison of the participant's Cash Balance Account with his or her previously accumulated retirement benefits and the contingent payment of only the "greater of" the two benefits to avoid payment of additional retirement benefits to older workers for many years of employment.

68.     Defendant intentionally designed conversion factors for establishing participants' hypothetical initial Cash Balance Accounts that have a discriminatory effect on the attainment of additional retirement benefits by older workers.

69.     Defendant's transition provisions for contingent payment of the Cash Balance Accounts are part of a scheme to avoid the payment of benefits to older workers for many years of employment.

70.     Defendant violated ERISA Section 510, 29 U.S.C. § 1140, by intentionally interfering with the attainment of benefits by older workers under the Cash Balance pension plan.

**NINTH CLAIM FOR RELIEF:  Decreases in Accrual Rates Based on Age**

71.     Accumulated interest credits under a cash balance pension plan are greater for younger participants due to the effect of compound interest until retirement. Unless the pay credit in a cash balance plan is commensurately age-weighted, the rate of accrual decreases with age.  ERISA Section 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), prohibits reductions in the rate of accrual "because of the attainment of any age."  The same prohibition is contained in ADEA Section 4(i)(1)(A), 29 U.S.C. § 623(i)(1)(A).

72.     AT&T's Cash Balance formula increases the pay credit at five-year intervals, from a minimum of 3% of salary for participants under age 30, to a maximum of 10% of salary for participants 55 years of age and older.

73.     While the age-weighted pay credits in the "new" formula somewhat mitigate age discrimination in the rate of accrual, they do not eliminate it.  Although the pay credit increases with age, it increases only at five-year intervals from age 30 to age 55, and not at all after age 55.  Thus, participants over 55 years of age experience decreases in their rate of benefits accrual every year until they retire.

Similarly, because the pay credit increases only at five-year intervals between ages 40 and 55, plaintiffs and other class members experience yearly reductions in their rates of accrual at ages 41-44, 46-49, and 51-54.

74.    Such reductions in the rate of accrual because of age violate ERISA and the ADEA. AT&T's reductions in the rate of accrual because of age were knowing and intentional.

## STATEMENT OF ADDITIONAL FACTS

75.    On October 16, 2000, AT&T amended and restated the AT&T Management Pension Plan document to include Cash Balance Accounts and related provisions. Hereafter, the amended and restated Plan document is referred to as the "amended Plan document."

76.    The amended Plan document contains rules that were not in the preceding Plan document or any amendment adopted by the AT&T Board of Directors or a duly-authorized delegate before October 16, 2000. For example, the rules contained in Section 4.06(a)(ii) on "Payment of Pensions" were not in the preceding Plan document or any amendment adopted by the AT&T Board of Directors or a duly authorized delegate prior to October 16, 2000.

77.    Under both the preceding Plan document and the amended Plan document, the normal retirement age for the AT&T Management Pension Plan is generally defined as age 65. Upon information and belief, over 90% of AT&T's management employees are retired before age 65.

78.     In a section entitled "Cash Balance Accounts," Section 4.04(e)(i) of the amended Plan document provides that the Accrued Benefit derived from the Cash Balance Account for a participant who has attained normal retirement age will equal "the participant's Cash Balance Account (as of the last day of the month . . . preceding the date on which the Accrued Benefit is being determined), divided by the appropriate factor in [Appendix] Section B.02, based on the participant's attained age."

79.     For participants who have not attained the normal retirement age, Section 4.04(e)(ii) of the amended Plan document provides that the Accrued Benefit derived from the Cash Balance Account "shall be determined by projecting the Participant's Cash Balance Account .. . to the Participant's Normal Retirement Age, and dividing . . . by the appropriate factor in [Appendix] Section B.02, based on the Participant's attained age."

80.     Pursuant to ERISA section 204(g), 29 U.S.C. § 1054(g), the AT&T Management Pension Plan may not be amended to reduce benefits earned under the Plan's pre-existing pay base formulas. Under the title "Pay Base Formulas," Section 4.05 of the amended Plan document preserves the pay base formulas that were applicable under the preceding Plan document, including the Special Update to the pay base formulas that was effective August 1, 1997.

81.     However, in Section 4.06(a)(ii) on "Payment of Pensions," the amended Plan document provides that when a benefit is payable "before normal retirement

20

age" the "Participant's pension benefit, payable monthly, for his or her life, equals the greater of:

  (1) the Accrued Benefit derived from his or her Cash Balance Account under Section 4.04, multiplied by the early commencement factor set forth in Section B.03 or

  (2) the Accrued Benefit determined under the Pay Base Formulas under Section 4.05, reduced by one half percent for each calendar month or part thereof by which the Participant's age at the Pension Commencement Date is less than fifty-five years . . ."

82. Pursuant to Section 4.06(a)(ii), payment of the greater of "(1)" or "(2)" satisfies the Plan's obligation to pay *both* the Accrued Benefit determined under the pre-existing Pay Base Formulas in Section 4.05 for service through August 1, 1997, and any Accrued Benefits derived from the Cash Balance Account under Section 4.04.

## TENTH CLAIM FOR RELIEF: Conditioning payment of vested accrued benefits on forbearance violates ERISA section 203(a)

83. To conform with AT&T's Applications for Determination to the IRS and the holding in Esden v. Bank of Boston, 229 F.3d 154, 169 (2d Cir. 2000), both the preceding and the amended AT&T Plan documents must comply with the 133% benefit accrual method in ERISA section 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B). The 133% accrual method requires that defined benefit pension plans, including cash balance plans, offer "annual rates" of benefit accrual. The annual rates of benefit accruals in later years of participation can be no more than 133% of the annual rates in earlier years. See, e.g., Esden, supra, 229 F.3d at 169.

84.    Under Section 4.04 of the amended Plan document, the named plaintiffs have "annual rates" of benefit accrual for 1998, 1999, 2000, etc. In exhibits attached to an affidavit AT&T submitted to this Court on November 13, 2000, AT&T computed the accrued benefits for the named plaintiffs at the end of each year. For example, according to AT&T's computations, named plaintiff Donald Noerr's accrued benefits expressed in the form of an annual annuity will increase by $1,218 as a result of his employment in 1999, $1,080 in 2000, and $1,039 in 2001.

85.    Section 4.06(a)(ii) of AT&T's amended Plan document provides, however, that a plan participant only receives the annual rates of benefit accrual from his or her Cash Balance Account for 1998, 1999, 2000, and succeeding years if the participant does not retire before the normal retirement age and receive the ERISA "protected" pay base formula benefits. This places a condition on receipt of the accrued benefits derived from the Cash Balance Accounts for 1998, 1999, 2000, etc.

86.    For example, under section 4.06(a)(ii) of the amended Plan document, the AT&T Management Pension Plan will not pay, and Donald Noerr will not receive, any of the accrued benefits that Mr. Noerr earned in 1998, 1999, and succeeding years if he retires before age 60. Unless Mr. Noerr retires at or after age 65, he will not receive either the full amount or the actuarially equivalent value of the accrued benefits that he earns in the years after January 1, 1998. Mr. Noerr's annual rates of benefit accruals in the years 1999-2001 are set out in the table below along with the payments that the AT&T Plan will make pursuant to section 4.06(a)(ii) if Mr. Noerr retires before age 60:

22

| Year | Age | Annual benefit accrual | Accrual as % of salary | Payment on retirement before 60 |
|------|-----|------------------------|------------------------|----------------------------------|
| 1999 | 57 | $1,218 | 1.62% | $0.00 |
| 2000 | 58 | $1,080 | 1.43% | $0.00 |
| 2001 | 59 | $1,039 | 1.38% | $0.00 |

87.     A right to benefit accruals must be unconditional to satisfy the

nonforfeitability requirements of ERISA Section 203(a), 29 U.S.C. § 1053(a).

Pursuant to the regulations at 26 C.F.R. 1.411(a)-4: "[A] right which, at a particular

time, is conditioned under the plan upon . . . subsequent forbearance which will

cause loss of such right is a forfeitable right at that time."  IRS Notice 96-8, 1996-1

C.B. 359, explains:

> "If benefits . . . have accrued [but] those benefits are disregarded when benefits
> commence before normal retirement age, the plan has effectively conditioned
> entitlement to the benefits . . . on the employee not taking a distribution prior to
> normal retirement age."

Accord Esden v. Bank of Boston, supra, 229 F.3d at 157 and 168 ("because Plaintiff

received less than she would have had she not elected to take her [cash balance]

benefit in the form of a lump sum, part of her pension benefit was made conditional

on the option chosen, in violation of the anti-forfeiture provisions of ERISA §203(a),

I.R.C. §411(a)(2) and Treas. Reg. 1.411(a)(4)").

88.     The amended Plan document conditions entitlement to the accrued

benefits derived from the participant's Cash Balance Account on the participant not

retiring before the normal retirement age and receiving a distribution of his or her

ERISA protected benefits.  Under the amended Plan document, the right to the cash

balance benefit accruals is not unconditional as required by ERISA Section 203(a),

29 U.S.C. § 1053(a).

### ELEVENTH CLAIM FOR RELIEF: Conditioning receipt of the actuarial value of vested accrued benefits violates ERISA Section 204(c)(3)

89.     ERISA section 204(c)(3), 29 U.S.C. § 1054(c)(3), provides that "if an

employee's accrued benefit is to be determined as an amount other than an annual

benefit commencing at normal retirement age, . . . the employee's accrued benefit . .

. shall be the actuarial equivalent of such benefit."

90.     Section 4.04(e) of AT&T's amended Plan document provides a method for

determining the accrued benefits derived from plan participants' Cash Balance

Accounts at both normal and early retirement ages.  In conjunction with the early

commencement factors set forth in Appendix Section B.03, this section offers

"annual rates" of benefit accrual as required by ERISA's 133% rule and potentially

satisfies the actuarially equivalent value requirement in ERISA section 204(c)(3).

91.     However, Section 4.06(a)(ii) on "Payment of Pensions" adds a restriction

on the payment of accrued benefits that negates the potential for compliance.

Section 4.06(a)(ii) provides that participants who retire before the normal retirement

age and receive ERISA-protected benefits will *not* receive the actuarial value of the

annual retirement benefits that they accrued in their Cash Balance Accounts in 1998,

1999, 2000, etc.  Section 4.06(a)(ii) violates ERISA Section 204(c)(3) because it

deprives participants who retire before the normal retirement age of the actuarial

value of their cash balance benefit accruals in 1998, 1999, 2000, and succeeding

years.

**TWELFTH CLAIM FOR RELIEF: Reducing "protected" benefits by 6% per year for commencement before age 55 violates ERISA section 204(g)**

92. Section 4.06(a)(ii) of the amended Plan document provides that ERISA-protected early retirement benefits will be reduced by "one half percent" per month, or 6% per year, for commencement before age 55– unless the participant has over 30 years of service (in which case the reduction is one quarter percent per month).

93. The reduction of a protected age 55 annuity by 6% per year for commencement prior to age 55 is in excess of a reasonable actuarial reduction. By comparison, the reduction factors set forth in Sections 4.06(a)(ii) and B.03 of the amended Plan document for annuities derived from the Cash Balance Accounts are 3.8% per year for the 10 years before age 55, and 2.65% per year for the next 10 years. A 6% reduction per year of an age 55 annuity means that the "protected" annuity is reduced to nothing if the participant is age 38 (16.6 years x 6% = 100%). At age 40, the ERISA-protected annuity is reduced to 10% of the protected amount – when a reasonable actuarial reduction would be about 50%.

94. Through the 6% per annum reduction to the protected annuity amounts, AT&T has adopted a plan provision under which participants lose or forfeit their ERISA-protected annuities. This violates ERISA Section 204(g), 29 U.S.C. § 1054(g). An amendment to a plan violates the statutory protection if it creates a new circumstance in which the value of the protected benefits is lost or forfeited. 26

25

C.F.R. 1.411(d)-4, Q&A 7; Esden v. Bank of Boston, supra, 229 F.3d at 168

("because Plaintiff received less than she would have had she not elected to take her

benefit in the form of a lump sum, part of her pension benefit was made conditional

on the option chosen"; finding it "similarly unpersuasive" that the participant

"elected" a forfeiture).

### PRAYER FOR RELIEF ON ADEA CLAIMS

WHEREAS, the Plaintiffs prays that this Court:

A.     Find and conclude that Defendant AT&T has violated the Age

Discrimination Act and the New Jersey Law Against Discrimination by age-

based transition rules for the computation and payment of cash balance benefits.

B.     Order Defendant to pay the cash balance pay credits and interest with no

contingency on receipt based on the pension benefits the Plaintiffs and other

older workers have previously accumulated.

C.     Order Defendant to implement cash balance pay credits and interest

credits that do not produce a decrease in the rate of accrual because of age.

D.     Order Defendant to pay the Plaintiffs additional amounts equal to the

shortfall in benefits produced by the contingent transition provisions in the cash

balance plan and the decreases in the rate of accrual because of age as liquidated

damages under the Age Discrimination in Employment Act.

E.     Order Defendant to pay the Plaintiffs interest, attorneys' fees and

expenses.

F.      Order Defendant to pay the Plaintiffs punitive damages under the New

Jersey Law Against Discrimination.

G.      Award such other legal and equitable relief as the Court may deem

appropriate.

## PRAYER FOR RELIEF ON ERISA CLAIMS

WHEREAS, the Plaintiffs pray that this Court:

A.      Declare that AT&T's implementation of the "new" formula violates the

15-day advance notice rule in ERISA Section 204(h), 29 U.S.C. § 1054(h); the

Plan document requirement in ERISA Section 402, 29 U.S.C. § 1102; the

fiduciary duties to act in accordance with the Plan document and keep

beneficiaries informed in ERISA Section 404, 29 U.S.C. § 1104, and the

Summary Plan Description rules in ERISA Sections 102 and 104(b)(1), 29

U.S.C. §§ 1022 and 1024(b)(1).

B.      Declare that due to AT&T's failure to provide the required ERISA Plan

documents and notices, the reduction in the rate of future accruals under the

"cash balance" features has not become effective to date, and will not become

effective until AT&T complies with the ERISA Section 204(h) notice

requirements.

C.      Declare that AT&T's transition provisions for contingent payment of the

Cash Balance Accounts violate the prohibition on interference with the

attainment of benefits in ERISA Section 510, 29 U.S.C. § 1140.

D.     Declare that the terms of the Defendant Pension Plan, as amended by the "new" cash balance feature, violate the nonforfeitability standards in ERISA Section 203(a), 29 U.S.C. § 1053(a), and ERISA Section 204(c)(3), 29 U.S.C. § 1054(c)(3), and the prohibitions in ERISA Section 204(g), 29 U.S.C. § 1054(g) and Section 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), against reductions in accrued benefits because of amendments to the plan and against reductions in the rate of benefit accrual because of age.

E.     Order that if and when AT&T takes the lawful steps to make cash balance features effective, there must be no reductions in protected accrued benefits, no age-based decreases in rates of accruals, and receipt of the cash balance plan's annual pay credits and interest may not be contingent on the participant's previous accumulated benefits.

F.     Order that AT&T's SPD fully disclose all features of the cash balance plan described above that are not reformed by the Court's Order.

G.     Order the Defendants to pay interest, attorneys' fees and expenses.

H.     Award such other equitable and remedial relief as the Court may deem appropriate.

Respectfully submitted,

Stephen R. Bruce
Suite 210
805 15th St., NW
Washington, D.C. 20005
(202) 371-8013   SB-1240

28

Edgar Pauk
Suite 600
144 E. 44th St.
New York, NY 10017
(212) 983-4000

*Jonatha I Nirenberg*  SRB w/auth.

Jonathan I. Nirenberg
Deutsch, Resnick, Green & Grabell
One University Plaza, Suite 305
Hackensack, NJ 07601
(201) 498-0900

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

PHILLIP C. ENGERS, WARREN J. MCFALL :
DONALD G. NOERR, and GERALD SMIT, :
individually and on behalf of all others
similarly situated, :
        Plaintiffs, :

   vs. : Civil Action No. 98-CV-3660 (NHP)

  :

AT&T and AT&T MANAGEMENT : **CERTIFICATE OF SERVICE**
PENSION PLAN,
        Defendants. :

  :

I hereby certify that Plaintiffs' Third Amended Complaint and Demand for Jury Trial was this 28th day of November 2001, served by sending a copy by Federal Express, next day delivery, to the attorneys for the Defendants, addressed to:

        Christopher H. Mills
        Patricia S. Robinson
        Patricia A. Cullen
        Collier, Jacob & Mills
        580 Howard Avenue
        Somerset, NJ 08873

Stephen R. Bruce