Stephen R. Bruce
Suite 210
805 15th St., NW
Washington, DC 20005
(202) 371-8013 SB-1240

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY (NEWARK)

| | |
|---|---|
| PHILLIP C. ENGERS, WARREN J. MCFALL : DONALD G. NOERR, and GERALD SMIT individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| | 98-CV-3660 (JLL/RJH) |
| AT&T and AT&T MANAGEMENT PENSION PLAN, | FOURTH AMENDED CLASS ACTION COMPLAINT with DEMAND FOR JURY TRIAL |
| Defendants. | |

## FOURTH AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiffs, complaining of the Defendants, aver:

### ADDRESSES OF NAMED PARTIES

1.    The Plaintiffs' addresses are:

Phillip C. Engers
3607 My Ladys View Ct.
Monkton, MD 21111-1920

Warren J. McFall
12 Wilshire Run

Scotch Plains, NJ 07076-2841

Donald G. Noerr
718 Coleman Place
Westfield, NJ 07090-4315

Gerald Smit
14 Sarah Court
Bridgewater, NJ 08807

2.    The Defendants' addresses are:

AT&T Corp.
295 North Maple Avenue
Basking Ridge, NJ 07920

AT&T Management Pension Plan
East Tower, Room 821
One Speedwell Avenue
P.O. Box 1954
Morristown, NJ 07962-1954

## JURISDICTION AND VENUE

3.    Plaintiffs invoke the jurisdiction of this Court pursuant to the Employee

Retirement Income Security Act of 1974 as amended, and the Age Discrimination in

Employment Act of 1967 as amended.

4.    Venue is proper in this Court in that two of the Plaintiffs reside in this

District and the Defendants reside or may be found in this District. The Defendant

Pension Plan is also administered from this District.

## JURY TRIAL

5.    Plaintiffs demand a trial by jury under the United States Constitution,

2

Fed.R.Civ.P. 38(a), the federal Age Discrimination in Employment Act of 1967, 29

U.S.C. § 626(c), and the New Jersey Law Against Discrimination.

## THE PARTIES

6.      Plaintiffs are management employees of AT&T who were participants in

the AT&T Management Pension Plan as of December 31, 1996. The Plaintiffs reside at

the addresses given above. Plaintiff Phillip Engers was born in October 1948 and is

currently age 52. Warren McFall was born in August 1938 and is currently age 62.

Donald Noerr was born in March 1942 and is currently age 59. Gerald Smit was born in

June 1950 and is currently age 51. The members of the proposed class reside throughout

the United States and in foreign countries and on information and belief number in the

tens of thousands.

7.      On information and belief, Defendant AT&T Corp. ("AT&T) is a business

corporation organized and existing under the laws of the State of New York. AT&T is

qualified to do business in New Jersey and does business in New Jersey.

8.      Defendant AT&T is an "employer" within the meaning of the Age

Discrimination in Employment Act of 1967 as amended and the Employee Retirement

Income Security Act of 1974 as amended.

9.      Defendant AT&T Management Pension Plan (the "Plan") is an employee

benefit plan, as defined at Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and, more

particularly, it is, in pertinent part, an "employee pension benefit plan", as defined at

3

ERISA Section 3(2)(A), 29 U.S.C. § 1002(2)(A). The administrative offices of the Defendant Plan are in Morristown, New Jersey.

10.     Defendant AT&T functions as the "plan administrator" for the AT&T Management Pension Plan within the meaning of ERISA. Through the AT&T Employees' Benefit Committee, Defendant AT&T functions as a fiduciary for the AT&T Management Pension Plan within the meaning of ERISA.

## CLASS ACTION ALLEGATIONS

11.     Plaintiffs bring this action as a class action in accordance with Federal Rule of Civil Procedure 23 to resolve disputes under the Employee Retirement Income Security Act of 1974 as amended and under the Age Discrimination in Employment Act of 1967 as amended. Judicial economy dictates resolving all issues as a single action in accordance with Federal Rule of Civil Procedure 23(b).

12.     Plaintiffs bring this action as a class action on behalf of AT&T management employees who have participated in the AT&T Management Pension Plan. The proposed class is defined as any and all persons who:

1.     Are former or current AT&T management employees,

2.     Are currently over age 40,

3.     Participated in the AT&T Management Pension Plan on December 31, 1996 and on or after the January 1, 1998 date on which the Pension Plan was converted to a cash balance design.

The proposed class covers all participants in the AT&T Management Pension Plan who

4

have not earned or will not earn any additional pension benefits from one or more years of employment under AT&T's new cash balance pension plan.

13.    On information and belief, the proposed class numbers in the tens of thousands and is so numerous that joinder of all members is impracticable.

14.    There are common questions of law and fact affecting the rights of Plaintiffs as employees of Defendant. The claims of the named class representatives are typical of the claims of the class. The named class representatives are all members of the class and will fairly and adequately protect the interests of the class. This action is best maintainable as a class action because Defendant has acted and/or refused to act on grounds generally applicable to the class the Plaintiffs represent, thereby making appropriate final injunctive and other equitable relief in favor of Plaintiffs and the class. In addition, the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudication that would establish incompatible standards of conduct for Defendant.

15.    With respect to the classwide claims for monetary relief under the Age Discrimination in Employment Act, the ADEA requires that members of the proposed class affirmatively opt into the suit after notice is given. 29 U.S.C. § 626(b) (incorporating by reference 29 U.S.C. § 216(b) of the Fair Labor Standards Act); see Lusardi v. Xerox Corp., 99 F.R.D. 89, 91-93 (D.N.J. 1983)

5

## STATEMENT OF FACTS

16.     AT&T established the AT&T Management Pension Plan in October 1980 as a system-wide defined benefit plan for AT&T employees (up to the end of 1983 the plan's name was the "Bell System Management Pension Plan"). Before 1980, AT&T and the former Bell Operating Companies had each sponsored separate pension plans. The establishment of the AT&T Management Pension Plan consolidated and unified those pension plans. Since its establishment, the AT&T Management Pension Plan has offered participants annuities at retirement determined under a formula based on years of participation in the plan, times a percentage of compensation in a specified pay base averaging period (the "old" formula).

17.     On information and belief, AT&T stopped accruing benefits under the previous Plan formula effective December 31, 1996, for certain purposes and effective July 31, 1997, for other purposes.

18.     On November 10, 1997, AT&T distributed a brochure to Plan participants announcing a change in its benefit formula to a new formula known as a "cash balance" formula (the "cash balance formula" or features).

19.     Pursuant to the "cash balance" formula, participants were assigned initial Cash Balance Accounts. The initial Cash Balance Accounts set up for participants were far less than the value of the accumulated annuities earned under the "old" formula. The Cash Balance Accounts are hypothetical accounts, that is, separate individual accounts

6

have not actually been set up for each participant as with a 401(k) or other defined contribution plan that are equal in total to the plan's assets.

20.    AT&T nominally credits the hypothetical Cash Balance Account of each participant with two components on an annual basis. The first is a percentage of a participant's salary referred to as the "pay credit." The second component is interest on the participant's hypothetical Account Balance which, after a short-term introductory rate of 7%, will compound at the rate of 4% until payment of pension benefits, whether a participant continues in AT&T's employment or not.

21.    The new formula effects two changes that may not be obvious on its face. The first is that retirement benefits are now based on year-by-year compensation rather than average compensation in a final pay base averaging period. A second change is that undiscounted retirement benefits at age 55 are eliminated. These changes significantly reduced the rate of future accruals.

22.    The brochure that AT&T distributed on November 10, 1997, announcing the "new" formula did not disclose that the "new" formula masks a reduction in future benefit accruals.

23.    Transition provisions for the cash balance plan provide that participants are not unconditionally entitled to their hypothetical Cash Balance Accounts, but will receive the "greater of" the accumulated pension benefits to which they were already eligible or the amount hypothetically calculated for the new Cash Balance Account. As a result of

7

how the initial Cash Balance Account was calculated and this transition provision, older employees earn no additional retirement benefits for a number of years beyond those to which they are already eligible under the defined benefit plan's retirement provisions.

24.     When AT&T adopted a resolution about the cash balance formula on April 16, 1997, AT&T knew that employees within 7 years of retirement eligibility would not earn any additional benefits from the cash balance formula because of the transition features that AT&T was implementing. AT&T knew that for some older workers, their cash balance accounts would not "move ahead of the old plan" for 13 years.

25.     The cash balance formula and transition features were designed for AT&T by Actuarial Sciences Associates ("ASA"). ASA is a benefits consulting firm that was wholly owned by AT&T until July 1998, at which time AT&T sold it to ASA's management and employees. In a November 1998 article in the publication Compensation and Benefits Review, Michael J. Gulotta, president of ASA, and Harold W. Burlingame, AT&T's executive vice-president for Human Resources, explained the benefit calculations for older AT&T employees under the cash balance feature and transition provisions:

> "When 47-year-old mid career employees projected the value of their annuities - if they were to retire at age 55 - they found they were coming up short [that is, the benefits under the old plan were greater than the cash balance account]. They hadn't miscalculated - this was a feature of the cash balance plan.
>
> ". . . . AT&T encouraged employees to examine the figures beginning at about age 60 - when cash balance moves ahead of the old plan."

8

26.     On information and belief, AT&T adopted a resolution in a closed-door meeting on April 16, 1997, that contained some concepts of the "new" cash balance feature and transition provisions, but AT&T did not adopt Plan amendments on that date.

27.     As late as February 17, 1999, AT&T stated in a letter to an attorney that the documentation of the "new" cash balance feature and transition provisions was not available and that the Plan Document reflecting the "new" cash balance amendments was still in the process of being prepared.

**FIRST CLAIM FOR RELIEF: Age Discrimination in Pension Benefit Freeze**

28.     The statements of the previous counts are hereby included as if set forth at length.

29.     The Plaintiffs and the members of the proposed Plaintiff class are over 40 years of age. The Plaintiffs and the members of the proposed Plaintiff class are in the protected class under the federal Age Discrimination in Employment Act of 1967 as amended and the New Jersey Law Against Discrimination.

30.     The Age Discrimination in Employment Act ("ADEA") prohibits discrimination against any individual with respect to compensation, including compensation in the form of pension benefits, because of the individual's age. The ADEA does not permit age-based pay differences; "a lower pension for an older worker is equivalent to a lower salary for the same work." Quinones v. City of Evanston, 58 F.3d 275, 278 (7th Cir. 1995).

31.     Age discrimination is tested on the basis of the individual's current compensation. An employer cannot avoid a finding of age discrimination in current compensation on the basis that an older worker's accumulated compensation or benefits are higher than that of a younger worker.

32.     The ADEA's "bona fide employee benefit plan" exception exempts certain bona fide employee benefit plans from scrutiny for age discrimination.

33.     The "bona fide employee benefit plan" exception only applies where the actual cost incurred or actual amount of payment made on behalf of an older worker is not less than that incurred on behalf of a younger person when the tests in 29 C.F.R. 1625.10 are applied.

34.     On or about November 1997, AT&T implemented the above-described cash balance features and transition provisions and informed Plaintiffs that changes had been made to the pension plan in which they participated. AT&T's previous defined benefit plan offered valuable retirement benefits, including undiscounted early retirement benefits, for eligible employees. Older employees who were eligible for early retirement had valuable accumulated retirement benefits.

35.     In making the transition to the cash balance plan, Defendant AT&T made changes that freeze the amount of the retirement benefits that Plaintiffs will receive for many years at the previously accumulated levels.

36.     Defendant used a transition formula or design based on age to effectuate

10

this freeze. No younger, recently hired employee experiences a benefit freeze. All recently hired, younger employees experience annual increases in their pensions.

37.     The transition provisions of the cash balance plan effect the freeze of older workers' pensions by providing that participants will receive the "greater of" the accumulated defined benefits to which the employees were already eligible or the amount computed under the new cash balance feature.

38.     As a result of this transition provision and the low level at which AT&T set the initial Cash Balance Accounts, older employees earn no additional benefits for a number of years beyond the benefits to which they were already entitled under the defined benefit plan's retirement provisions.

39.     Plaintiffs will realize no increase in the amount of their pensions for seven or more years. During those years the value of Plaintiffs' pensions will actually decrease due to the effects of inflation.

40.     The "greater of" formulation in the transition provisions discriminates on the basis of age by providing that older workers who are eligible for early retirement earn no additional benefits under the cash balance plan in the current year, the near-term and the long-term. The "greater of" provision in the transition provisions is a subterfuge for providing much lower cash balance benefits for older workers than those provided to younger workers.

41.     The transition provisions of AT&T's cash balance plan can be contrasted

11

with provisions in which the amounts due under a new cash balance plan start at zero and add to the accumulated benefits which employees had already earned under the previous defined benefit plan. AT&T could have avoided discrimination on the basis of age by providing that older workers would earn additional benefits under the cash balance plan on the same basis as younger employees and that those benefits would be added to the accumulated benefits to which they were already eligible.

42.     AT&T's transition provisions are like those involved in cases in which older employees who were retirement eligible have been denied severance benefits. The courts have declared this discriminatory practice to be unlawful. In this case, employees who are retirement eligible have been denied additional current compensation in the form of additional cash balance benefits because of the "greater of" formulation in the cash balance plan's transition rules.

43.     During the years in which the amount of the older workers' pensions does not increase, Defendant incurs no cost for Plaintiffs' pensions while at the same time Defendant incurs the cost of younger employees' pensions.

44.     Following AT&T's implementation of the cash balance plan with its transition provisions, the actual costs incurred on behalf of older workers are less than those incurred on behalf of younger persons when the test in 29 C.F.R. 1625.10 is applied. The actual payments made to older workers under the new cash balance plan are also less than those incurred on behalf of younger persons.

12

45.     In designing the transition provisions from the old pension plan to the new cash balance plan, Defendant deliberately treated Plaintiffs differently because of age.

46.     Defendant's actions discriminate against Plaintiffs because of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) and 29 U.S.C. § 626(b). Defendant's actions also discriminate against Plaintiffs in violation of the New Jersey Law Against Discrimination.

47.     As required by 29 U.S.C. § 626(d), a representative of the class filed a timely charge of age discrimination on February 9, 1998, on behalf of himself and other workers in the protected age group with the Equal Employment Opportunity Commission more than 60 days prior to commencement of this action. The EEOC was not able to resolve the controversy and issued a letter to the Plaintiff dated May 18, 1998 and received May 20, 1998, advising that it was unable to resolve the controversy as described and that a lawsuit may be filed against the respondent within 90 days from receipt of the notice. Plaintiffs filed this action on a timely basis on August 5, 1998.

## SECOND CLAIM FOR RELIEF: Age Discrimination in Contingent Payment of New Cash Balance Benefits Based on Previously Accumulated Pensions

48.     The statements of the previous counts are hereby included as if set forth at length.

49.     As previously stated, on or about November 10, 1997 Defendant informed Plaintiffs that changes had been made to the pension plan. Among the changes Defendant purported to make was to set up Cash Balance Accounts for each employee.

13

50.     The Cash Balance Account was set at an amount far less than the actuarial equivalent of the previous accumulated pension.

51.     Defendant purport to make periodic additions to the cash balance account, but receipt of those additions is contingent on the amount of the participant's accumulated pension benefits under the prior defined benefit plan being less than the Cash Balance Account.

52.     Defendant froze benefits under the previous benefit formula as of December 31, 1996, for certain purposes and effective July 31, 1997, for other purposes. According to the transition provisions of the cash balance pension plan, Plaintiffs can take the greater of the accumulated frozen benefits or the Cash Balance Account on retirement, but not both.

53.     Because AT&T has set the initial Cash Balance Accounts at a low value, it takes many years for the cash balance to move ahead of the value of the Plaintiffs' accumulated pension benefits before the changes. Because of the contingency in the "greater of" formulation, Plaintiffs are entitled to no cash balance benefits for seven or more years.

54.     Younger, newly hired employees are entitled to receive benefits from the new cash balance pension plan without contingency.

55.     Defendant has deliberately treated Plaintiffs differently because of age.

56.     During the years in which cash balance benefits are contingent on the

14

"greater of" formulation, Defendant incurs no cost for Plaintiffs' pensions while at the same time Defendant incurs costs for the younger employees' pensions.

57. Defendant's actions discriminate against Plaintiffs due to age under the Age Discrimination in Employment Act of 1967 as amended and the New Jersey Law Against Discrimination.

**THIRD CLAIM FOR RELIEF: Improper, Untimely and Inadequate ERISA Section 204(h) Notice**

58. As alleged above, AT&T had not adopted actual Plan amendments containing the cash balance feature and transition provisions before November 10, 1997, or even before February 17, 1999. AT&T implemented the "new" cash balance feature and transition provisions effective January 1, 1997. AT&T has to date not notified Plan participants of a significant reduction in the rate of future accruals.

59. By implementing the reduction before adoption of the actual amendments and without providing notice of a significant reduction in the future rate of accruals at least 15 days before the amendments' effective date, AT&T violates ERISA Section 204(h), 29 U.S.C. § 1054(h), which requires that adoption of the amendments precede notice and that notice of the reduction precede implementation by at least 15 days.

60. Under Third Circuit precedent, exhaustion of claims procedures is not required for statutory ERISA claims. Exhaustion is, moreover, futile in this case because correspondence with the Plaintiffs and AT&T's Answer maintains that its cash balance plan does not violate the law. A May 29, 1998 letter from Brian M. Byrnes, the AT&T

15

official responsible for "pension matters," states "there is nothing further to discuss ....

[T]his letter concludes the Company's contact with you on this subject outside of any

legal process you may determine to undertake." Thus, even if Plaintiffs' claim was not a

statutory ERISA claim, it would be futile to file an internal claim with company officers

whose position is already staked out.

**FOURTH CLAIM FOR RELIEF: Failure to Maintain Plan Pursuant to
Written Instrument**

61.     By implementing the "new" cash balance formula without a written Plan

Document, AT&T violated ERISA Section 402, 29 U.S.C. § 1102 ("Establishment of

plan"), which requires that "[e]very employee benefit plan shall be established and

maintained pursuant to a written instrument."

**FIFTH CLAIM FOR RELIEF: Breach of Fiduciary Duty**

62.     By implementing the "new" cash balance formula without a written Plan

Document, AT&T violated ERISA Section 404, 29 U.S.C. § 1104 ("Fiduciary duties"),

which requires, in pertinent part, that "a fiduciary shall discharge his duties with respect

to a plan solely in the interest of the participants and beneficiaries and ... (D) in

accordance with the documents and instruments governing the plan ...."

**SIXTH CLAIM FOR RELIEF: Misleading Summary Plan Description**

63.     On information and belief, AT&T distributed a Summary Plan Description

("SPD") of the Plan, as amended by the "new" cash balance feature and transition

provisions, in 1998 to some employees. The SPD, however, does not disclose that the

16

"new" features:

    (a)    significantly reduce the rate of future benefit accruals;

    (b)    cause older participants to earn no additional benefits beyond those already earned;

    (c)    use conversion factors to compute the initial Cash Balance that are not based on the most valuable annuity offered under the "old" formula;

    (d)    base benefits on year-by-year salary, whereas the "old" formula based them on compensation in a final pay base averaging period; and

    (e)    do not offer undiscounted retirement benefits at age 55.

In addition, illustrative examples in the SPD intentionally omit comparisons of benefits under the "old" and the "new" formulas.

64.    AT&T's SPD is not "written in a manner calculated to be understood by the average plan participant," and is not "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan," in violation of Section 102 of ERISA, 29 U.S.C. § 1022.

65.    AT&T's SPD was also not distributed to employees in a manner reasonably calculated to ensure actual receipt by the employees. The Plaintiffs did not receive the aforementioned SPD until AT&T filed the same as an exhibit in this action in December 1998.

## SEVENTH CLAIM FOR RELIEF: Breach of Fiduciary Duty to Keep Beneficiaries Informed

66.    AT&T's failure to disclose and its deceptive or uninformative disclosures to

Plan participants and beneficiaries of the disadvantages of the "new" cash balance
features and transition provisions, compared to the "old" defined benefit plan, do not
comply with its fiduciary duties to keep trust beneficiaries fully informed, in violation of
ERISA Section 404, 29 U.S.C. § 1104.

## EIGHTH CLAIM FOR RELIEF: Intentional Interference with Attainment of Benefits

67.    Defendant intentionally designed the comparison of the participant's Cash
Balance Account with his or her previously accumulated retirement benefits and the
contingent payment of only the "greater of" the two benefits to avoid payment of
additional retirement benefits to older workers for many years of employment.

68.    Defendant intentionally designed conversion factors for establishing
participants' hypothetical initial Cash Balance Accounts that have a discriminatory effect
on the attainment of additional retirement benefits by older workers.

69.    Defendant's transition provisions for contingent payment of the Cash
Balance Accounts are part of a scheme to avoid the payment of benefits to older workers
for many years of employment.

70.    Defendant violated ERISA Section 510, 29 U.S.C. § 1140, by intentionally
interfering with the attainment of benefits by older workers under the Cash Balance
pension plan.

## NINTH CLAIM FOR RELIEF: Decreases in Accrual Rates Based on Age

71.    Accumulated interest credits under a cash balance pension plan are greater

18

for younger participants due to the effect of compound interest until retirement. Unless the pay credit in a cash balance plan is commensurately age-weighted, the rate of accrual decreases with age. ERISA Section 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), prohibits reductions in the rate of accrual "because of the attainment of any age." The same prohibition is contained in ADEA Section 4(i)(1)(A), 29 U.S.C. § 623(i)(1)(A).

72.    AT&T's Cash Balance formula increases the pay credit at five-year intervals, from a minimum of 3% of salary for participants under age 30, to a maximum of 10% of salary for participants 55 years of age and older.

73.    While the age-weighted pay credits in the "new" formula somewhat mitigate age discrimination in the rate of accrual, they do not eliminate it. Although the pay credit increases with age, it increases only at five-year intervals from age 30 to age 55, and not at all after age 55. Thus, participants over 55 years of age experience decreases in their rate of benefits accrual every year until they retire. Similarly, because the pay credit increases only at five-year intervals between ages 40 and 55, plaintiffs and other class members experience yearly reductions in their rates of accrual at ages 41-44, 46-49, and 51-54.

74.    Such reductions in the rate of accrual because of age violate ERISA and the ADEA. AT&T's reductions in the rate of accrual because of age were knowing and intentional.

19

## STATEMENT OF ADDITIONAL FACTS

75.     On October 16, 2000, AT&T amended and restated the AT&T Management

Pension Plan document to include Cash Balance Accounts and related provisions.

Hereafter, the amended and restated Plan document is referred to as the "amended Plan

document."

76.     The amended Plan document contains rules that were not in the preceding

Plan document or any amendment adopted by the AT&T Board of Directors or a

duly-authorized delegate before October 16, 2000. For example, the rules contained in

Section 4.06(a)(ii) on "Payment of Pensions" were not in the preceding Plan document or

any amendment adopted by the AT&T Board of Directors or a duly authorized delegate

prior to October 16, 2000.

77.     Under both the preceding Plan document and the amended Plan document,

the normal retirement age for the AT&T Management Pension Plan is generally defined

as age 65. Upon information and belief, over 90% of AT&T's management employees are

retired before age 65.

78.     In a section entitled "Cash Balance Accounts," Section 4.04(e)(i) of the

amended Plan document provides that the Accrued Benefit derived from the Cash

Balance Account for a participant who has attained normal retirement age will equal "the

participant's Cash Balance Account (as of the last day of the month . . . preceding the date

on which the Accrued Benefit is being determined), divided by the appropriate factor in

20

[Appendix] Section B.02, based on the participant's attained age."

79.     For participants who have not attained the normal retirement age, Section

4.04(e)(ii) of the amended Plan document provides that the Accrued Benefit derived from

the Cash Balance Account "shall be determined by projecting the Participant's Cash

Balance Account ... to the Participant's Normal Retirement Age, and dividing . . . by the

appropriate factor in [Appendix] Section B.02, based on the Participant's attained age."

80.     Pursuant to ERISA section 204(g), 29 U.S.C. § 1054(g), the AT&T

Management Pension Plan may not be amended to reduce benefits earned under the

Plan's pre-existing pay base formulas. Under the title "Pay Base Formulas," Section 4.05

of the amended Plan document preserves the pay base formulas that were applicable

under the preceding Plan document, including the Special Update to the pay base

formulas that was effective August 1, 1997.

81.     However, in Section 4.06(a)(ii) on "Payment of Pensions," the amended

Plan document provides that when a benefit is payable "before normal retirement age" the

"Participant's pension benefit, payable monthly, for his or her life, equals the greater of:

(1)     the Accrued Benefit derived from his or her Cash Balance Account under
        Section 4.04, multiplied by the early commencement factor set forth in
        Section B.03 or

(2)     the Accrued Benefit determined under the Pay Base Formulas under Section
        4.05, reduced by one half percent for each calendar month or part thereof by
        which the Participant's age at the Pension Commencement Date is less than
        fifty-five years . . ."

82.     Pursuant to Section 4.06(a)(ii), payment of the greater of "(1)" or "(2)"

21

satisfies the Plan's obligation to pay both the Accrued Benefit determined under the

pre-existing Pay Base Formulas in Section 4.05 for service through August 1, 1997, and

any Accrued Benefits derived from the Cash Balance Account under Section 4.04.

**TENTH CLAIM FOR RELIEF: Conditioning payment of vested accrued
benefits on forbearance violates ERISA sections 203(a) and 204(b)(1)(B)**

83.     To conform with AT&T's Applications for Determination to the IRS and

the holding in Esden v. Bank of Boston, 229 F.3d 154, 169 (2d Cir. 2000), both the

preceding and the amended AT&T Plan documents must comply with the 133% benefit

accrual method in ERISA section 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B). The 133%

accrual method requires that defined benefit pension plans, including cash balance plans,

offer "annual rates" of benefit accrual. The annual rates of benefit accruals in later years

of participation can be no more than 133% of the annual rates in earlier years. See, e.g.,

Esden, supra, 229 F.3d at 169.

84.     Under Section 4.04 of the amended Plan document, the named plaintiffs

have "annual rates" of benefit accrual for 1998, 1999, 2000, etc. In exhibits attached to an

affidavit AT&T submitted to this Court on November 13, 2000, AT&T computed the

accrued benefits for the named plaintiffs at the end of each year. For example, according

to AT&T's computations, named plaintiff Donald Noerr's accrued benefits expressed in

the form of an annual annuity will increase by $1,218 as a result of his employment in

1999, $1,080 in 2000, and $1,039 in 2001.

85.     Section 4.06(a)(ii) of AT&T's amended Plan document provides, however,

22

that a plan participant only receives the annual rates of benefit accrual from his or her

Cash Balance Account for 1998, 1999, 2000, and succeeding years if the participant does

not retire before the normal retirement age and receive the ERISA "protected" pay base

formula benefits. This places a condition on payment of the accrued benefits derived from

the Cash Balance Accounts for 1998, 1999, 2000, etc.

86.     For example, under section 4.06(a)(ii) of the amended Plan document, the

AT&T Management Pension Plan will not pay, and Donald Noerr will not receive, any of

the accrued benefits that he earned in 1998, 1999, and 2000 if he retires before age 60.

Unless Mr. Noerr retires at or after age 65, he will not receive either the full amount or

the actuarially equivalent value of the accrued benefits that he earns in the years after

January 1, 1998. Mr. Noerr's annual rates of benefit accruals in the years 1999-2001 are

set out in the table below along with the payments that the AT&T Plan will make

pursuant to section 4.06(a)(ii) if Mr. Noerr retires before age 60:

| Year | Age | Annual benefit accrual | Accrual as % of salary | Payment on retirement before 60 |
|------|-----|------------------------|------------------------|---------------------------------|
| 1999 | 57  | $1,218                 | 1.62%                  | $0.00                           |
| 2000 | 58  | $1,080                 | 1.43%                  | $0.00                           |
| 2001 | 59  | $1,039                 | 1.38%                  | $0.00                           |

87.     A right to benefit accruals must be unconditional to satisfy the

nonforfeitability requirements of ERISA Section 203(a), 29 U.S.C. § 1053(a). Pursuant to

the regulations at 26 C.F.R. 1.411(a)-4: "[A] right which, at a particular time, is

conditioned under the plan upon . . . subsequent forbearance which will cause loss of such right is a forfeitable right at that time." IRS Notice 96-8, 1996-1 C.B. 359, explains:

"If benefits . . . have accrued [but] those benefits are disregarded when benefits commence before normal retirement age, the plan has effectively conditioned entitlement to the benefits . . . on the employee not taking a distribution prior to normal retirement age."

Accord Esden v. Bank of Boston, supra, 229 F.3d at 157 and 168 ("because Plaintiff received less than she would have had she not elected to take her [cash balance] benefit in the form of a lump sum, part of her pension benefit was made conditional on the option chosen, in violation of the anti-forfeiture provisions of ERISA §203(a), I.R.C. §411(a)(2) and Treas. Reg. 1.411(a)(4)").

88.    The amended Plan document conditions entitlement to the accrued benefits derived from the participant's Cash Balance Account on the participant not retiring before the normal retirement age and receiving a distribution of his or her ERISA protected benefits. Under the amended Plan document, the right to the cash balance benefit accruals is not unconditional as required by ERISA Section 203(a), 29 U.S.C. § 1053(a).

88A.    Alternatively, the amended Plan document violates the 133 1/3% rule in ERISA Section 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B) because (1) the annual rates of accrual for 1998, 1999, and succeeding years are in many circumstances only nominal bookkeeping accruals that are not actually payable, (2) the annual rates of accrual in "later plan years" exceed 133% of the accruals in the current and subsequent plan years, and (3) the annual rates of accrual for younger employees and new hires are always payable

24

whereas the annual rates for older employees are only nominal entries.

## ELEVENTH CLAIM FOR RELIEF: Conditioning receipt of the actuarial value of vested accrued benefits violates ERISA Section 204(c)(3)

89.     ERISA section 204(c)(3), 29 U.S.C. § 1054(c)(3), provides that "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit."

90.     Section 4.04(e) of AT&T's amended Plan document provides a method for determining the accrued benefits derived from plan participants' Cash Balance Accounts at both normal and early retirement ages. In conjunction with the early commencement factors set forth in Appendix Section B.03, this section offers "annual rates" of benefit accrual as required by ERISA's 133% rule and potentially satisfies the actuarially equivalent value requirement in ERISA section 204(c)(3).

91.     However, Section 4.06(a)(ii) on "Payment of Pensions" adds a restriction on the payment of accrued benefits that negates the potential for compliance. Section 4.06(a)(ii) provides that participants who retire before the normal retirement age and receive ERISA-protected benefits will not receive the actuarial value of the annual retirement benefits that they accrued in their Cash Balance Accounts in 1998, 1999, 2000, etc. Section 4.06(a)(ii) violates ERISA Section 204(c)(3) because it deprives participants who retire before the normal retirement age of the actuarial value of their cash balance benefit accruals in 1998, 1999, 2000, and succeeding years.

25

**TWELFTH CLAIM FOR RELIEF: Reducing "protected" benefits by 6% per year for commencement before age 55 violates ERISA section 204(g) and ERISA sections 203(e) and 205(g)**

92.     Section 4.06(a)(ii) of the amended Plan document provides that

ERISA-protected early retirement benefits will be reduced by "one half percent" per

month, or 6% per year, for commencement before age 55— unless the participant has

over 30 years of service (in which case the reduction is one quarter percent per month).

93.     The reduction of a protected age 55 annuity by 6% per year for

commencement prior to age 55 is in excess of a reasonable actuarial reduction. By

comparison, the reduction factors set forth in Sections 4.06(a)(ii) and B.03 of the

amended Plan document for annuities derived from the Cash Balance Accounts are 3.8%

per year for the 10 years before age 55, and 2.65% per year for the next 10 years. A 6%

reduction per year of an age 55 annuity means that the "protected" annuity is reduced to

nothing if the participant is age 38 (16.6 years x 6% = 100%). At age 40, the

ERISA-protected annuity is reduced to 10% of the protected amount — when a

reasonable actuarial reduction would be about 50%.

94.     Through the 6% per annum reduction to the protected annuity amounts,

AT&T has adopted a plan provision under which participants lose or forfeit their

ERISA-protected annuities. This violates ERISA Section 204(g), 29 U.S.C. § 1054(g). An

amendment to a plan violates the statutory protection if it creates a new circumstance in

26

which the value of the protected benefits is lost or forfeited. 26 C.F.R. 1.411(d)-4, Q&A
7; Esden v. Bank of Boston, supra, 229 F.3d at 168 ("because Plaintiff received less than
she would have had she not elected to take her benefit in the form of a lump sum, part of
her pension benefit was made conditional on the option chosen"; finding it "similarly
unpersuasive" that the participant "elected" a forfeiture).

94A. Alternatively, the 6% per year reductions to the undiscounted age 55 annuity
violate Treasury Regulation 1.411(a)-11(a)(2), which was issued under Code Section
411(a)(11), 26 U.S.C. § 411(a)(11), and ERISA Sections 203(e) and 205(g), 29 U.S.C. §§
1053(e) and 1055(g). Treasury Regulation 1.411(a)-11(a)(2) expressly provides that a
distribution option to a "subsidized early retirement benefit" must offer at least the
actuarial equivalent of the subsidized benefit. See also Costantino v. TRW, 13 F.3d 969,
978-80 (6th Cir. 1994). AT&T's 6% per year reduction to the undiscounted age 55 benefit
violates this rule because it exceeds a reasonable actuarial reduction.

## PRAYER FOR RELIEF ON ERISA CLAIMS

WHEREAS, the Plaintiffs pray that this Court:

A.     Declare that AT&T's implementation of the "new" formula violates the
15-day advance notice rule in ERISA Section 204(h), 29 U.S.C. § 1054(h); the Plan
document requirement in ERISA Section 402, 29 U.S.C. § 1102; the fiduciary duties to
act in accordance with the Plan document and keep beneficiaries informed in ERISA
Section 404, 29 U.S.C. § 1104, and the Summary Plan Description rules in ERISA

27

Sections 102 and 104(b)(1), 29 U.S.C. §§ 1022 and 1024(b)(1).

B.     Declare that due to AT&T's failure to provide the required ERISA Plan documents and notices, the reduction in the rate of future accruals under the "cash balance" features has not become effective to date, and will not become effective until AT&T complies with the ERISA Section 204(h) notice requirements.

C.     Declare that the terms of the Defendant Pension Plan, as amended by the "new" cash balance features, violate the minimum accrual standards in ERISA Section 204(b)(1),  29 U.S.C. § 1054(b)(1), because they create periods of years in which participants have no annual rate of accrual that is actually payable.

D.     Declare that the terms of the Defendant Pension Plan which provide for a 6% per annum reduction for commencement of benefits before age 55 violates 26 C.F.R. 1.411(a)-11(a)(2), which requires that any distribution options to a subsidized early retirement benefit must offer at least the present value of the subsidized benefit.

E.     Order that if and when AT&T takes the lawful steps to make cash balance features effective, there must be no reductions in protected accrued benefits, no age-based decreases in rates of accruals, and receipt of the cash balance plan's annual pay credits and interest may not be contingent on the participant's previous accumulated benefits.

F.     Order that AT&T's SPD fully disclose all features of the cash balance plan described above that are not reformed by the Court's Order.

G.     Order the Defendants to pay interest, attorneys' fees and expenses.

H.     Award such other equitable and remedial relief as the Court may deem

appropriate.

Respectfully submitted,

Stephen R. Bruce
Suite 210
805 15th St., NW
Washington, D.C. 20005
(202) 371-8013 SB-1240

Edgar Pauk
Suite 600
144 E. 44th St.
New York, NY 10017
(212) 983-4000

 s/ Jonathan I. Nirenberg
Jonathan I. Nirenberg
Deutsch Resnick, P.A.
One University Plaza, Suite 305
Hackensack, NJ 07601
(201) 498-0900