| | |
|---|---|
| PHILLIP C. ENGERS, WARREN J. MCFALL, DONALD G. NOERR, and GERALD SMIT, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>   vs.<br><br>AT&T and AT&T MANAGEMENT PENSION PLAN,<br>                Defendants. | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>C.A. No. 98-CV-3660 (SRC/CCC) |

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER DISMISSALS OF THE CLASS' FIRST, SECOND AND NINTH CLAIMS FOR RELIEF BASED ON AGE DISCRIMINATION

Stephen R. Bruce
805 15th St., NW, Suite 210
Washington, DC 20005
(202) 371-8013

Edgar Pauk
144 E. 44th St., Suite 600
New York, NY 10017
(212) 983-4000

Jonathan I. Nirenberg (JIN 2964)
101 Eisenhower Parkway, Suite 300
Roseland, NJ 07068
(973) 795-1240

Attorneys for Plaintiffs

**Table of Contents**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  Plaintiffs' First and Second Claims for Relief under ADEA §4(a) . . . . . . . 3

II. Plaintiffs' Ninth Claim for Relief under ADEA §4(i) and ERISA
    §204(b)(1)(H) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arnett v. CALPERS*, 179 F.3d 690 (9th Cir. 1999), *vacated and remanded on other grounds*, 528 U.S. 1111 (2000) ................................................. 8

*Bryant v. New Jersey DOT*, 998 F. Supp. 438 (D.N.J. 1998) ....................... 1

*Cataldo v. Moses*, 361 F. Supp. 2d 420 (D.N.J. 2004) ............................... 1

*Christensen v. Harris County*, 529 U.S. 576 (2000) .................................. 11

*DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719 (3d Cir. 1995) ............ 8

*Eaton v. Onan*, 117 F. Supp. 2d 812 (S.D.Ind. 2000) ................................ 12

*Electric Mobility Corp. v  Bourns Sensors/Controls*, 87 F. Supp. 2d 394 (D.N.J. 2000) ................................................................................. 1-2

*Hirt v. Equitable*, 2006 WL 2023545 (S.D.N.Y. 2006) ............................. 12

*Laurent v. PriceWaterhouseCoopers*, 2006 WL 2546805 (S.D.N.Y. 2006) ............................................................................................. 12

*Pippin v.  Burlington Resources Oil and Gas Co.*, 440 F.3d 1186 (10th Cir. 2006) ................................................................................ 4

*Register v. PNC Financial Services*, 2005 WL 3120268 (E.D. Pa. 2005) .. 11

*Richards v. FleetBoston*, 427 F. Supp. 2d 150 (D.Conn. 2006) ............. 11-12

*Smith v. City of Jackson*, 544 U.S. 228 (2005) .................................... 1, 4, 8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .................................... 5

*Wells v. Gannett Retirement Plan*, 385 F. Supp. 2d 1101 (D.Colo. 2005) . 12

## FEDERAL STATUTES AND REGULATIONS

ADEA §4(i), 29 U.S.C. §623(i) .............................................................. 1, 10

ADEA §12(a), 29 U.S.C. §631(a) .............................................................. 10

ERISA §204(b)(1)(H), 29 U.S.C. §1054(b)(1)(H) ................................ 1, 10

Pension Protection Act (2006), P.L. 109-280 ................................... 9, 12-13

29 C.F.R. 1625.7(c) ................................................................................... 8

52 Fed. Reg. 45360 (Nov. 27, 1987) .............................................................. 8

53 Fed. Reg. 11876 (April 11, 1988) ....................................................... 8, 11

67 Fed. Reg. 76123 (Dec. 11, 2002) ............................................................ 11

IRS Announcement 2004-57 (July 6, 2004) ................................................. 11

## MISCELLANEOUS

AARP Public Policy Institute, *Transition Provisions in Large Converted Cash Balance Pension Plans* ................................................................. 9

*EEOC Compliance Manual* ........................................................................ 8

**Introduction**

Plaintiffs respectfully request that this Court reconsider Judge Politan's dismissals of the First, Second, and Ninth Claims for Relief (collectively, the "age discrimination claims") in light of: (1) the Supreme Court's decision in *Smith v. City of Jackson*, 544 U.S. 228, 240 (2005), which definitively holds that "disparate impact" claims are cognizable under the Age Discrimination in Employment Act ("ADEA"), and (2) a December 2002 explanation by the Treasury Department, four subsequent district court decisions, and an August 2006 Act of Congress, all of which establish that the protection against ceasing or reducing the rate of an employee's benefit accrual based on "any age" in ERISA §204(b)(1)(H), 29 U.S.C. §1054(b)(1)(H) and ADEA §4(i), 29 U.S.C. §623(i), is not limited to employees who are past the age of 65.

Reconsideration is appropriate when there has been an "intervening change in law." In *Bryant v. New Jersey DOT*, 998 F.Supp. 438, 441 (D.N.J. 1998), Judge Orlofsky recognized that "courts have not hesitated to vacate orders of dismissal based upon subsequent Supreme Court decisions" "when an appeal from such decision appears almost certain to compel its reversal." See also *Cataldo v. Moses*, 361 F.Supp. 2d 420, 432-34 (D.N.J. 2004) (vacating dismissal of claims based on intervening New Jersey Supreme Court decision); *Electric Mobility Corp. v*

*Bourns Sensors/Controls*, 87 F.Supp. 2d 394, 401 (D.N.J. 2000) (citing cases).

Reconsidering the dismissal of the age claims is consistent with the case law and in the interests of justice for several reasons. First, postponing the age claims until after an "almost certain" remand will make discovery in this already 8-year-old action more difficult to conduct. Second, addressing this controversy under the ADEA may lessen the importance or even obviate the need to reach some of the more complicated ERISA issues. Third and most importantly, postponing the age claims until after a remand could leave the members of this class without essential monthly retirement income for still longer portions of their retirements.

When reinstatement of the age claims was discussed in the September 21, 2006 settlement conference, counsel agreed to prepare a consent order and set up a scheduling conference with Magistrate Judge Cecchi to proceed with the outstanding discovery. Several hours later, counsel for the Defendants sent an email to Plaintiffs' counsel indicating that Defendants had considered this matter further and decided <u>not</u> to consent to reinstatement of the age discrimination claims and that Defendants "may well oppose any such motion." Ex. A (attached). Accordingly, Plaintiffs have prepared the present motion requesting that the Court reconsider those dismissals (which the Court also has authority to do *sua sponte,* see *Electric Mobility Corp.*, supra, 87 F.Supp.2d at 401).

## I. Plaintiffs' First and Second Claims for Relief under ADEA §4(a)

Plaintiffs' first amended Complaint, filed on June 7, 1999, alleged that AT&T's cash balance conversion discriminated against older employees by: (1) effecting a benefit "freeze" during which older employees do not earn any additional benefits for a period of years; and (2) implementing a "greater of" provision in which older employees do not actually receive any of their cash balance benefits. The cash balance conversion was designed, by contrast, so that "younger employees" would receive benefits from the cash balance plan immediately and "without contingency." ¶¶28-57.[1]

On June 29, 2000, Judge Politan ruled that "The ADEA forbids disparate treatment but not disparate impact." 2000 U.S. Dist. LEXIS 10937 *17 (attached for the Court's convenience as Ex. B). In accordance with this precept, Judge Politan found that "the gravamen of the First and Second Claims for Relief is that the new Plan has the effect of discriminating against older employees when implemented. Thus, the First and Second Claims are actually disparate impact claims inasmuch as the essence of the claims is that the new Plan adversely

---

[1] The first amended Complaint was docketed as entry #25, but is not available electronically through the CM/ECF system. However, the paragraph numbers and corresponding text in the Fourth Amended Complaint, which is available under docket #232, are identical.

"impacts" the older employees." *Id.* at *18. Solely on this basis, Judge Politan dismissed the First and the Second Claims for Relief. *Id.*

Judge Politan's decision must be reconsidered in light of the Supreme Court's decision in *Smith v. City of Jackson*, 544 U.S. 228 (2005), which definitively holds that the ADEA authorizes disparate impact claims. The Supreme Court held that the "text" of the ADEA "focuses on the *effects* of the action on the employee rather than the motivation of the employer" and that the EEOC regulations "have consistently interpreted the ADEA to authorize relief on a disparate impact theory." 544 U.S. at 236 (emph. in orig.).[2]

As *Smith v. City of Jackson* explains, employees seeking to establish a disparate impact claim under the ADEA will be "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities." 544 U.S. at 241 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)); accord *Pippin v. Burlington Resources Oil and Gas Co.*, 440 F.3d 1186, 1200-1201 (10th Cir. 2006) (the

---

[2] On April 29, 2005, Plaintiffs' counsel advised Judge Linares of the Supreme Court's March 30, 2006 decision in *Smith v. City of Jackson*, but stated that Plaintiffs would not move for reconsideration until after his rulings on the parties' then-pending cross motions for summary judgment. On June 20, 2005, Defendants' counsel asked Judge Linares to direct Plaintiffs to file a motion by July 15, 2005, but the Court did not respond to either submission.

employees in a protected group "must point to both a significant disparate impact and to a particular policy or practice that caused the disparity").

In this instance, the first amended Complaint more than adequately pleads the age claims under notice pleading requirements. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (elements of *prima facie* case are evidentiary, not pleading, requirements). Indeed, Plaintiffs went well beyond fair notice by identifying the two specific practices that led to the disparate impact on older employees. See Cplt. ¶¶19-25, 35-45 and 49-56. The Complaint alleges that AT&T froze the benefits earned under the prior retirement benefit formulas and established initial account balances at levels "far less" than the value of the pension benefits earned before the conversion. ¶¶19, 38, 50. The difference between the value of the benefits earned before the conversion and the initial account balances was larger for "older" employees. ¶¶23, 38. AT&T next provided that an employee could receive only the "greater of" those two benefits, rather than receive "both" the old benefits plus new ones (under what is called an "A plus B" formula). ¶¶37, 40-42, 52. For older employees, the spread between the value of the old benefits and the initial account balances created periods of time (now commonly called "wear-aways") during which no additional benefits were earned. ¶¶23, 38-40,53. These wear-away or catch-up periods could last for up to

5

"13 years" for older employees. ¶¶24-25.

The discovery already taken further establishes the viability of Plaintiffs' age claims by revealing that the opening account balances actually represented as little as 45% of the value of employees' previously-earned benefits. Ex. 64.[3] AT&T-prepared spreadsheets on "crossover" (the term that AT&T coined in place of "wear-away") demonstrate that the resulting period of time with no additional retirement benefits is a function of "Age" and "Service." Ex. 45. Under AT&T's cash balance design, it would "conservative[ly]" take an employee who was over age 43 from one to eight years until the cash balance benefit caught up with the value of the previously-earned benefit and the employee earned additional retirement income. By contrast, the same spreadsheets indicate immediate increases in retirement benefits for all employees under age 44. *Id.* Another AT&T document shows that AT&T knew that "[i]n general" employees "within 7 years of retirement eligibility under the current plan" (i.e., employees age 48 and over) would "most likely" receive a greater benefit from the prior formula than the new

---

[3] References to numbered exhibits are to the exhibits in Plaintiffs' 6-volume Appendix filed in support of Plaintiffs' motion for summary judgment on October 7, 2004 (dkt. #214). Plaintiffs will supply a separate copy of those exhibits if the Court requests.

cash balance feature. Ex. 2, Tab 1, at 4.[4] Presentations to AT&T executives in February and July of 1997 included a slide about how "younger employees" would begin to earn cash balance benefits "immediately" while older employees would not. Ex. 43 at 12509 and Ex. 44 at 18298. Another AT&T document provides an example which states that "The reason John crosses over immediately is because of his younger age." Ex. 84 at 16236 (emph. added). Finally, an AT&T document entitled "Cash Balance Media Questions" flatly states that under AT&T's cash balance design, "older employees will see no increase to their pension for several years." Ex. 36 at 34257.

---

[4] A November 1998 article co-written by AT&T's Executive Vice-President for Human Resources and the Enrolled Actuary for the AT&T Management Pension Plan further states:

> "When 47-year-old mid career employees projected the value of their annuities–if they were to retire at age 55–they found they were coming up short [that is, the benefits under the old plan were greater than the cash balance account]. They hadn't miscalculated–this was a feature of the cash balance plan.
>
> "AT&T encouraged employees to examine the figures beginning at about age 60–when cash balance moves ahead of the old plan."

Ex. 42 at D10732. The purported encouragement "to examine the figures beginning at about age 60," is not evidenced in any of the documents that AT&T produced in discovery. Moreover, if it occurred, it was chimerical. Official "Form 5500 Annual Return/Reports" show that less than 2% of active participants are age 60 or over. Ex. C (attached).

7

Under *Smith v. City of Jackson* and the EEOC's regulations, employers are allowed to defend against practices that have a disparate impact on a protected group by proving that the discrimination is based on a reasonable factor other than age ("RFOA"). 544 U.S. at 238-39. However, the EEOC's regulations establish that an RFOA cannot be one that uses age as a "limiting criterion." 29 C.F.R. 1625.7(c) ("When an employment practice uses age as a limiting criterion" the RFOA defense is "unavailable"). See also 52 Fed. Reg. 45360, 45362, and 53 Fed. Reg. 11876, 11880 (1987 and 1988 proposed regulations by the EEOC and Treasury Department stating that age discrimination exists if age is a limiting factor); *Arnett v. CALPERS*, 179 F.3d 690, 695 (9th Cir. 1999), vacated and remanded on other grounds, 528 U.S. 1111 (2000) (disability income was based on a percentage of pay multiplied by "potential years of service" to retirement; "practical application" of the formula "leaves no doubt that age at hire ... is the sole basis for lower benefits"); *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 730 n.12 (3d Cir. 1995) ("when a company's policy distinguishes employees on the basis of a factor analytically indistinct from age" the ADEA may be violated); *EEOC Compliance Manual*, Section 3, Employee Benefits (basing benefits on "potential years" to retirement is a proxy for age because more "constructive years" are given to younger workers than older workers).

8

Here, AT&T's internal spreadsheets and other documents show that the disparate impact of the cash balance conversion provisions on earning additional retirement benefits was a function of "age," rather than a "reasonable factor other than age." The wear-away periods were, moreover, not a necessary or inherent part of a cash balance conversion. A study by AARP shows that AT&T stood virtually alone among large employers in implementing a cash balance conversion under which older employees received no additional retirement income for the rest of their careers. AARP Public Policy Institute, *Transition Provisions in Large Converted Cash Balance Pension Plans*, at 20.[5] Other studies by benefit consulting firms also show that wear-aways are not necessary or inherent parts of cash balance conversions. See Ex. 19, Tab A, at 35169-20 and Ex. 19, Tab B at 5 and 8-11.[6]

## II.  Plaintiffs' Ninth Claim for Relief under ADEA §4(i) and ERISA §204(b)(1)(H)

The Ninth Claim in Plaintiffs' first amended Complaint further alleged that

---

[5] Available online at http://assets.aarp.org/rgcenter/econ/2005_13_pension.pdf .

[6] Under Section 701(a)(1) of the 2006 Pension Protection Act, P.L. 109-280, Congress prospectively outlawed any and all wear-aways in cash balance conversions, without regard to whether they have a disparate impact on older employees.

9

AT&T violated the parallel age discrimination prohibitions in ADEA §4(i), 29 U.S.C. §623(i), and ERISA §204(b)(1)(H), 29 U.S.C. §1054(b)(1)(H), because AT&T's conversion to a cash balance plan had the effect of ceasing or reducing the employees' rate of benefit accrual based on age. On June 6, 2001, Judge Politan issued a "*sua sponte*" dismissal of this age discrimination claim, which the initial June 29, 2000 ruling had preserved. Defendants suggested this ruling, without making a motion, in opposing the Plaintiffs' motion to certify the ERISA class and approve a representative action under the ADEA. Judge Politan certified the ERISA class, but then held, in response to Defendants' suggestion, that the prohibitions in ADEA §4(i) and ERISA §204(b)(1)(H) against age discrimination in the rate of an employee's benefit accrual only apply to participants who are past age 65. 2001 U.S. Dist. LEXIS 25889 *7-10 (attached as Ex. D).

Judge Politan did not explain how this decision could be squared with the unambiguous statutory reference to "any age" or with the ADEA's protection of employees over the age of 40. ADEA §12(a), 29 U.S.C. §631(a). In December 2002, the Treasury Department rejected Judge Politan's interpretation, as has virtually every subsequent judicial ruling:

> "Under these sections, attainment of <u>any age</u> means a participant's growing older. Accordingly, these regulations, like the 1988 proposed regulations, would apply regardless of whether the participant is older than, younger than, or at normal retirement age.

10

> "Some commentators have suggested that only cessations or reductions after attainment of normal retirement age are prohibited by these sections. This interpretation is not consistent with the language of the statute, which does not specify any minimum age at which the rule applies."

67 Fed. Reg. 76123, 76124 (Dec. 11, 2002) (emph.added). See also 53 Fed. Reg. 11876, 11880 (April 11, 1988) ("Any differences in the rate of benefit accrual...may not be based, directly or indirectly, on the attainment of any age").[7]

In *Register v. PNC Financial Services*, 2005 WL 3120268 *7 n.17 (E.D. Pa. 2005) (appeal pending on other grounds under CA 05-5445), Judge Davis observed that the Treasury Department's proposed 2002 regulations "emphatically reject the first holding in *Eaton* [*v. Onan*, 117 F.Supp.2d 812 (S.D. Ind. 2000)], that the age discrimination provisions only apply after normal retirement age." 2005 WL 3120268 *7 n.17. While PNC Financial initially advanced the interpretation that Judge Politan adopted, at oral argument PNC's counsel reversed course and stated: "We agree totally that any age means any age." Ex. E (attached) at 23. PNC did not cross-appeal the district court's subsequent ruling. See also

---

[7] The regulations to which this explanation was appended were withdrawn to provide Congress an opportunity to address the cash balance controversy through legislation. See IRS Announcement 2004-57 (July 6, 2004). But the explanation of the law in the preamble and in the 1988 proposed regulations, which were never withdrawn, is "entitled to respect to the extent it has the power to persuade." *Richards v. FleetBoston*, 427 F.Supp. 2d 150, 161 (D.Conn. 2006) (citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)).

*Wells v. Gannett Ret. Plan*, 385 F.Supp.2d 1101, 1102 (D.Colo. 2005) ("the term ['any age'] is unambiguous;" "This provision applies to the attainment of 'any age' and not just to the attainment of normal retirement age"); *Richards v. FleetBoston*, 427 F.Supp.2d 150, 160-61 (D.Conn. 2006) ("By its own terms, this subsection applies to employees of any age"); *Hirt v. Equitable*, 2006 WL 2023545 *33 (S.D.N.Y. 2006) ("The application of the age discrimination prohibition contained in section 204(b)(1)(H) of ERISA to workers of all ages is...the necessary consequence of the broad language employed by the statute").[8] In modifying these same sections of ERISA and the ADEA under the 2006 Pension Protection Act, P.L. 109-280, which President Bush signed on August 17, 2006, Congress accepted that existing law applies to employees at "any age," and left that language intact, but prospectively modified the test for age discrimination to accommodate cash balance plans that define the employee's accrued benefit as "the balance of a hypothetical account." P.L. 109-280, §701(a) and (c) (no inference is to be created from that modification as to the treatment of such plans

---

[8] Contra *Laurent v. PriceWaterhouseCoopers*, 2006 WL2546805 *13 (S.D.N.Y. 2006) (adopting the alternate holding in *Eaton v. Onan*, 117 F.Supp.2d 812, 827-29 (S.D.Ind. 2000), without reference to the Treasury Department's explanation or the decisions in *Wells* and *Richards*; the *Laurent* decision mistakenly relied on a portion of *Hirt's* discussion of the legislative history rather than its holding and it miscites *Register* as support for the view that employees below age 65 are unprotected).

under current law, *id.* at §701(d)).

Again, when intervening events show that an appeal from an earlier decision "appears almost certain to compel its reversal," the court should reconsider the earlier decision, particularly if it was "*sua sponte*," rather than compel a party whose claims were dismissed to take an appeal to obtain an almost certain remand. Here, an intervening explanation by the Federal agencies with interpretive authority, four district court decisions, and an August 2006 Act of Congress all affirm that the statutory reference to "any age" is not limited to employees who are past age 65.

**Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider the rulings on the First, Second and Ninth Claims for Relief.

Dated: September 27, 2006

                                            Respectfully submitted,

                                            */s/ Stephen R. Bruce*
                                            Stephen R. Bruce
                                            Allison C. Caalim
                                            805 15th St., NW, Suite 210
                                            Washington, DC 20005
                                            (202) 371-8013

                                            Edgar Pauk
                                            144 E. 44th St., Suite 600

          New York, NY 10017
          (212) 983-4000

          <u>s/ Jonathan I. Nirenberg</u>
          Jonathan I. Nirenberg (JIN 2954)
          101 Eisenhower Pkwy, Suite 300
          Roseland, NJ 07068
          (973) 795-1240

          Attorneys for Plaintiffs

**ATTACHED EXHIBITS:**

Ex. A:    September 21, 2006 e-mail from Christopher Mills, counsel for Defendants.
Ex. B:    Judge Politan's June 29, 2000 decision, reported unofficially at 2000 U.S. Dist. LEXIS 10937.
Ex. C:    Extracts of Form 5500 Annual Return/Reports for the AT&T Management Pension Plan for 1998 and 2004.
Ex. D:    Judge Politan's June 6, 2001 decision, reported unofficially at 2001 U.S. Dist. LEXIS 25889.
Ex. E:    Extract from Transcript of 10/20/2005 Oral Argument in *Register v. PNC Financial Services*, E.D. Pa. CA 04-6097.