<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

PHILLIP C. ENGERS, WARREN J.
MCFALL, DONALD G. NOERR,
and GERALD SMIT, individually and on
behalf of all others similarly situated,

    Plaintiffs,

        v.

AT&T and AT&T MANAGEMENT
PENSION PLAN,

    Defendants.

Civil Action No. 98-3660 (SRC)

**OPINION**

---

**CHESLER, U.S.D.J.**

This matter comes before the Court on two motions. Defendants AT&T and AT&T Management Pension Plan (collectively, "Defendants" or "AT&T") move for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c). Plaintiffs Phillip C. Engers, Warren J. McFall, Donald G. Noerr, and Gerald Smit (collectively, "Plaintiffs") move for partial summary judgment, pursuant to FED. R. CIV. P. 56. For the reasons set forth below, both motions will be **DENIED**.

<u>BACKGROUND</u>

This case arises out of disputes over an AT&T Pension Plan (the "Plan"). The background to this case has been stated in previous Opinions in this case – most recently, the Opinion of March 30, 2006 – and will not be repeated here.

The instant motions concern two paragraphs in the Fourth Amended Class

Action Complaint ("FAC"), ¶ 88A in the Tenth Claim and ¶ 94A in the Twelfth Claim. Defendants have moved for judgment on the pleadings, asking that these paragraphs of these claims be dismissed. Plaintiffs have cross-moved for partial summary judgment on these paragraphs.

## ANALYSIS

I. **Legal Standards**

    A.    Rule 56 Motion for Summary Judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229,

238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

  B. Rule 12(c) Motion for Judgment of the Pleadings

The standard for a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) is the same as that for a motion to dismiss under FED. R. CIV. P. 12(b). See Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards").

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion

School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46. "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

II.     **The Rule 12(c) and Rule 56 motions as to ¶ 88A**

    A.     Defendants' 12(c) motion

Defendants' primary argument in support of their motion is that it is impossible for Plan § 4.06(a)(ii) to violate 29 U.S.C. § 1054(b)(1)(B) (the "133 1/3 % rule"). This, even if true, cannot justify granting their motion, because it relies on an unjustified, restrictive reading of the text of ¶ 88A. AT&T construes ¶ 88A in a way that rewrites it with a major limitation: AT&T reads ¶ 88A as if "the amended Plan document" means "Plan § 4.06(a)(ii) of the amended Plan document." AT&T does not justify or even acknowledge its insertion of this limitation, nor does this Court perceive a basis for it. The plain language of ¶ 88A includes the entire amended Plan document within its scope and does not limit it to any particular provision. Having misconstrued the scope of ¶ 88A, Defendants' 12(c) motion on this paragraph cannot succeed.

AT&T attempts to use Judge Bassler's October 17, 2002 Opinion to limit ¶ 88A. It does appear from that Opinion, which ruled on Defendants' motion to dismiss the Third Amended Complaint, that Plaintiffs' arguments and the Court's decision to dismiss Count Ten concerned Plan § 4.06(a)(ii). (October 17, 2002 Opinion at *6-*10.) This does not, however,

constrain the interpretation of ¶ 88A. Magistrate Judge Hedges, in his Order of November 17, 2004, ordered that "Plaintiffs may plead the following new legal theories as set forth in Paragraphs 88A and 94A of the proposed Fourth Amended Class Action Complaint." (Order of November 17, 2004 ¶ 1.) This language clearly expresses the understanding of the Court that ¶ 88A presented a new legal theory and, as such, was not limited by arguments already presented.

Moreover, to the extent that Defendants seek to constrain ¶ 88A by relying on any of the Court's prior rulings on the Tenth Claim in the Third Amended Complaint,[1] this runs contrary both to their previous statement and to this Court's previous decision. Defendants appealed the November 17, 2004 Order by the Magistrate Judge to the district court. In their brief, Defendants argued that "new paragraph 88A adds an entirely different claim." (Defs.' Appeal Br., Docket Entry No. 233, at 14.) Defendants now appear to take the opposite position, that the scope of ¶ 88A is restricted by the old claim.

Moreover, in deciding the appeal, the Court considered Defendants' argument and found the distinction between claims and new legal theories to be "both illusory and irrelevant." (Opinion of Sept. 13, 2005 at 3.) The Court affirmed the Magistrate Judge's Order. It is quite clear that the Court allowed Plaintiffs to amend their Complaint to plead new matters.

In this context, it appears that Defendants are now attempting to limit the impact of the leave to amend granted two years ago by reading ¶ 88A to restrict it to old matters. This is contrary to the Court's previous decision. As such, this Court reads ¶ 88A as a new legal theory and does not find that its scope is limited to Plan § 4.06(a)(ii).

In support of their Rule 12(c) motion, Defendants first argue that ¶ 88A fails to state a

---

[1] See, e.g., Defs.' Reply Br. 15-20.

6

claim because Plan § 4.06(a)(ii) cannot violate the 133 1/3 % rule, as § 4.06(a)(ii) sets forth the formula for calculating early retirement benefits, and ERISA § 204(b)(1)(B) addresses only normal retirement benefits. This Court need not reach the merits of this argument because, even if true, it is insufficient to show that the entire amended Plan document cannot violate the 133 1/3 % rule.

Next, Defendants argue that the Plan does comply with the 133 1/3 % rule, as shown in exhibits cited in FAC ¶ 84. Again, this Court need not reach the merits of this argument because, even if true, the fact that four exhibits show no violation is insufficient to demonstrate that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. As to ¶ 88A, Plaintiffs' motion for judgment on the pleadings will be denied.

  B. Plaintiffs' motion for partial summary judgment

Plaintiffs' brief in support of its motion for partial summary judgment on ¶ 88A suffers from many defects. Most significant among them is that it never gets down to the business of applying the 133 1/3 % rule to the benefit accrual methods specified in the amended Plan document – the subject of ¶ 88A. Rather, Plaintiffs focus on other issues, particularly payment.

Plaintiffs begin their argument by contending that Plaintiff Noerr has not been paid the benefits that he accrued. (Pls.' P.S.J. Br. 3-5.) This raises three questions that the parties have not examined. First, what does "payable" in the context of 29 U.S.C. § 1054(b)(1)(B) mean? Second, what does "payable" in the context of ¶ 88A mean? Third, do Plaintiffs' arguments about payment come within the scope of the statute and the Complaint? None of these necessary questions has been addressed by the parties.

While the title of § 1054 is "Benefit accrual requirements," payment is implicated in provision (b)(1)(B):

> A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.

This provision states two conditions that must both be met.[2] Both sub-rules refer to the benefit "payable at [the] normal retirement age." Whether or how this covers Plaintiffs' complaints that their benefits have not been paid depends on interpretation of the word "payable," both in ¶ 88A and 29 U.S.C. § 1054(b)(1)(B). Again, the parties have not briefed this issue, and this Court will not analyze it sua sponte. Before this Court can rule on Plaintiffs' payment arguments, however, the parties will likely need to address these questions.

Plaintiffs point to the example of Plaintiff Noerr and compare an early retirement benefit with the actuarial equivalent of the normal retirement benefit. (Pls.' P.S.J. Br. 3-5.) Plaintiffs do not explain how this issue is within the scope of 29 U.S.C. § 1054(b)(1)(B). Plaintiffs later return to this issue, but relate it to 29 U.S.C. § 1054(c)(3), which does contain an actuarial equivalence requirement. (Pls.' P.S.J. Br. 12.) Plaintiffs were not, however, granted leave to amend their Fourth Amended Complaint to include a claim for violation of 29 U.S.C. § 1054(c)(3), and ¶ 88A does not refer to this provision. Plaintiffs do not explain the link between their argument and 29 U.S.C. § 1054(b)(1)(B).

---

[2] This is also reflected in the relevant Treasury Regulation on the 133 1/3 % rule, 26 C.F.R. 1.411(b)-1(b)(2)(i), which distinguishes the two sub-rules and labels them "A" and "B."

As Defendants observe, Plaintiffs next attempt to turn the plain meaning of § 1054(b)(1)(B) on its head. Plaintiffs point to subsection § 1054(b)(1)(B)(iii), which provides that, for purposes of this paragraph, "the fact that benefits under the plan may be payable to certain employees before normal retirement age shall be disregarded." Although this plainly instructs the reader to disregard the payment of early retirement benefits, Plaintiffs attempt to use this as a rule limiting the accrual of early retirement benefits. (Pls.' P.S.J. Br. 14.) This is manifestly contrary to the provision's plain meaning. Moreover, 26 C.F.R. 1.411(b)-1(b)(2)(ii)(C) clearly states that the 133 1/3 % rule does not apply to early retirement benefits.

Plaintiffs next point to § 1054(b)(1)(B)(i), which provides that "any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years." Plaintiffs then misapply this provision in their "effective accrual" argument. (Pls.' P.S.J. Br. 18-20.) The effective accrual argument holds that, if you look at Plaintiff Noerr's annual accruals before the conversion, under the terms of the old Plan, and then look at his annual accruals after the conversion, under the terms of the new Plan, you see that the new Plan has the effect of causing zero accrual rates for some plan years, followed by a resumption of non-zero accrual rates. The theory is that these non-zero accrual rates exceed 133 1/3 % of the zero accrual rates, thus violating the 133 1/3 % rule.

This position is fatally flawed, and is undermined specifically by § 1054(b)(1)(B)(i). In making the "effective accrual" argument, Plaintiffs apply the 133 1/3 % rule to a hybrid plan that does not comport with § 1054(b)(1)(B)(i). This provision requires that, in applying the 133 1/3 % rule, one must look only at the provisions in force during the current year and apply them as if they had been in effect for all other plan years. This precludes the use of hybrid models in

which the benefit accruals for some years are calculated according to one plan, while for other years the benefit accruals are calculated by another plan. To show that the accruals under the amended Plan violate § 1054(b)(1)(B), Plaintiffs must calculate the entire accrual history as if the amended Plan had been in effect for every year, as required by § 1054(b)(1)(B)(i). In making the "effective accrual" argument, Plaintiffs have overlooked this.

As to their motion for partial summary judgment on ¶ 88A, Plaintiffs have failed to carry their burden under Rule 56. Plaintiffs would bear the burden of proof on the issues in ¶ 88A at trial. Under the law of the Third Circuit, then, to prevail on a motion for partial summary judgment, Plaintiffs "must show affirmatively the absence of a genuine issue of material fact" and "must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." Bressman, 327 F.3d at 238. Plaintiffs have not even argued that they have met this burden, no less done so. Plaintiffs' motion for partial summary judgment on ¶ 88A will be denied.

**III.     The Rule 12(c) and Rule 56 motions as to ¶ 94A**

In contrast to ¶ 88A, ¶ 94A does appear to be limited in scope to Plan § 4.06(a)(ii)(A)(2), which provides for a 6% benefit reduction for commencement before age 55. The FAC alleges that this provision violates 26 C.F.R. § 1.411(a)-11(a)(2). This regulation states:

> Accrued benefit. For purposes of this section, an accrued benefit is valued taking into consideration the particular optional form in which the benefit is to be distributed. The value of an accrued benefit is the present value of the benefit in the distribution form determined under the plan. For example, a plan that provides a subsidized early retirement annuity benefit may specify that the optional single sum distribution form of benefit available at early retirement age is the present value of the subsidized early retirement annuity benefit. In this

>case, the subsidized early retirement annuity benefit must be used to apply the valuation requirements of this section and the resulting amount of the single sum distribution.  However, if a plan that provides a subsidized early retirement annuity benefit specifies that the single sum distribution benefit available at early retirement age is the present value of the normal retirement annuity benefit, then the normal retirement annuity benefit is used to apply the valuation requirements of this section and the resulting amount of the single sum distribution available at early retirement age.

26 C.F.R. § 1.411(a)-11(a)(2).  This paragraph of the regulation provides a general definition for the section ("The value of an accrued benefit is the present value of the benefit in the distribution form determined under the plan"), followed by two examples.  The two examples deal with single sum forms of distribution and have no application to Plan § 4.06(a)(ii), which does not provide for a single sum distribution.[3]

In their motion for judgment on the pleadings, Defendants offer a confused attempt to argue that, in view of the language of this regulation, ¶ 94A fails to state a valid claim. Defendants first point to the examples and argue that they say the opposite of what Plaintiffs claim.  Because Plan § 4.06(a)(ii) does not entail a single sum distribution, the examples have no application to it.  Whether they say one thing or its opposite about single sum distributions is irrelevant to an analysis of the monthly-for-life benefits specified in § 4.06(a)(ii).  Defendants ignore the relevant and operative part of the regulation, the initial definition.

It is true that ¶ 94A mischaracterizes the meaning of 26 C.F.R. § 1.411(a)-11(a)(2): the regulation does not, as ¶ 94A implies, require that every distribution option for a subsidized early retirement benefit must be the actuarial equivalent of the subsidized benefit.  Similarly,

---

[3] Plan § 4.06(a)(ii)(A) states that "the Participant's pension benefit, payable monthly, for his or her life, equals the greater of . . ."  Pension benefits that are payable monthly for life cannot be single sum distributions.

this Court notes that the case cited in ¶ 94A, Costantino v. TRW, Inc., 13 F.3d 969, 980 (6th Cir. 1994), deals with lump sum distributions, rather than monthly payments for life. These observations by themselves, however, while raising doubt about the merit of the claim, are insufficient to demonstrate that there is no doubt that Plaintiffs can prove no set of facts which would entitle them to relief. The gist of ¶ 94A is that the 6% reductions violate 26 C.F.R. § 1.411(a)-11(a)(2). Defendants' argument misses the mark and does not demonstrate that the 6% reductions cannot violate this regulation.

In response, Plaintiffs assert as truth what they wished the regulation said: "When a plan provides that an optional form of benefit is based on a subsidized early retirement benefit, the plan is required to offer at least the value of that benefit." (Pls.' Opp. Br. 31.) No authority – statutes, cases, regulations – is provided to support this assertion. Plaintiffs have not explained how their actuarial equivalence contentions have a basis in 26 C.F.R. § 1.411(a)-11(a)(2).

Plaintiffs' other arguments are all meritless and bring them no closer to showing that they are entitled to judgment as a matter of law on ¶ 94A. Neither side has shown this Court what impact 26 C.F.R. § 1.411(a)-11(a)(2) has or does not have on the 6% reduction provision in Plan § 4.06(a)(ii)(A)(2). As to ¶ 94A, both Defendants' motion for judgment on the pleadings and Plaintiffs' motion for partial summary judgment will be denied.

## CONCLUSION

For the reasons stated above, Defendants' motion for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c), is **DENIED.** Plaintiffs' motion for partial summary judgment, pursuant to FED. R. CIV. P. 56, is **DENIED.**

                                                         s/ Stanley R. Chesler
                                           Stanley R. Chesler, U.S.D.J.

Dated: January 3, 2007