**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PHILLIP C. ENGERS, WARREN J. MCFALL, DONALD G. NOERR, and GERALD SMIT, individually and on behalf of all others similarly situated, : : : : : : | |
| Plaintiffs, : | Civil Action No. 98-3660 (SRC) |
| v. : : | **OPINION** |
| AT&T and AT&T MANAGEMENT PENSION PLAN, : : : | |
| Defendants. : | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion for conditional approval of ADEA collective action and authorization of notice to the class by Plaintiffs Phillip C. Engers, Warren J. McFall, Donald G. Noerr, and Gerald Smit (collectively, "Plaintiffs"). For the reasons set forth below, the motion will be **GRANTED**, subject to certain modifications.

**BACKGROUND**

This case arises out of disputes over an AT&T Pension Plan (the "Plan"). Defendants are AT&T and AT&T Management Pension Plan (collectively, "Defendants" or "AT&T"). The background to this case has been stated in previous Opinions and will not be repeated here. The instant motion concerns the First and Second Claims in the Fourth Amended Class Action Complaint ("FAC") which allege, in brief, that AT&T's change from one particular defined benefit pension plan to a new cash balance pension plan discriminated against workers on the

basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"). In the instant motion, Plaintiffs seek conditional approval of ADEA collective action and authorization of notice to the class.

## ANALYSIS

The ADEA allows groups of plaintiffs to maintain collective actions, incorporating by reference the standards of 29 U.S.C. § 216(b). 29 U.S.C. § 626(b). Trial courts in this circuit employ a two-step approach to certifying collective action that has been articulated by the Eleventh and Fifth Circuits:

> The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001) (citing Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-1214 (5th Cir. 1995)). Decisions as to whether to facilitate notice to potential plaintiffs, and how to facilitate it, are matters entrusted to the district court's discretion. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989).

As Plaintiffs observe, Defendants' opposition to their motion does not dispute the major points, raising a number of relatively minor issues. Defendants do not object to this Court's granting the motion to conditionally approve an ADEA collective action and authorize notice.

Plaintiffs ask that this Court approve a definition of the group of potential opt-in plaintiffs consisting of three conjunctive criteria:

a) are former or current AT&T management employees; and

b) were age 40 or over on November 19, 2001, or on the date when their employment with AT&T ended, if later; and

c) participated in the AT&T Management Pension Plan both on December 31, 1996 and after the January 1, 1998 date when the cash balance formula went into effect.

Defendants disagree with two aspects of this definition: 1) the age cut-off date in the second provision should be January 1, 1998; and 2) the third provision should restrict the class to active employees rather than plan participants on the relevant dates.

As to the age 40 cut-off date, Defendants argue that it is the date of adoption of a facially neutral policy that is the act of discrimination and, since there is no dispute that the new plan was adopted with an effective date of January 1, 1998, the ADEA protects only those who were in the protected class on that date. In response, Plaintiffs argue that AT&T has applied this practice of discrimination continuously from 1998 to the present, and that the passage of time cannot protect AT&T from liability for its ongoing discrimination.

Defendants err in treating the effective date of an employment policy as the trigger for discrimination claims under a disparate impact theory. Under a disparate impact theory, when an employer adopts a discriminatory policy with a certain effective date, a cause of action for a particular plaintiff accrues on the date that the policy has a discriminatory effect against him or

3

her.  The operative event is not the creation of the policy, but the use of it to discriminate against an individual.  Thus, for example, if a police department establishes a policy requiring all officer applicants to be able to lift weights of 100 pounds, effective January 1, 2000 and continuing thereafter, and this policy discriminates against female applicants, disparate impact claims are not limited to people who had applied as of January 1, 2000, but are available to those who apply thereafter and suffer from the later use of that policy to discriminate against them.

Defendants erroneously offer Lorance v. AT&T Technologies, 490 U.S. 900, 909 (1989) as authority for their position.  The Supreme Court did not hold in Lorance, as Defendants assert, that "it is the adoption of a facially neutral policy or plan with discriminatory effects, not its subsequent application to individual plaintiffs, that is the act of discrimination."  (Defs.' Opp. Br. 7.)  In Lorance, the Court held that a particular statutory provision in Title VII required that one particular claim of "discriminatory impact *must* be accompanied by proof of a discriminatory purpose," referring to the employer's purpose at the time of adoption of the discriminatory policy.  Lorance, 490 U.S. at 909.

In the instant case, Defendants have not pointed to any ADEA provision that would require Plaintiffs to prove discriminatory purpose at the time of adoption of the policy to prevail on their discriminatory impact claim.  In the absence of such a provision, Lorance holds, the cause of action accrues when the discriminatory impact is felt.  Id. at 908.  Moreover, the Supreme Court, in Smith v. City of Jackson, 544 U.S. 228, 235 (2005), the decision which led to this Court's restoring the First and Second Claims, held that disparate impact claims are available under the ADEA and do not require a showing of discriminatory intent.  The Court noted that the ADEA's "text focuses on the effects of the action on the employee rather than the motivation for

4

the action of the employer." Id. at 236.  The relevant date is the date of the discriminatory effect on the employee, not of the discriminatory intent of the employer, as in the part of Lorance that Defendants point to.  Restricting the class to plaintiffs eligible for protection under the ADEA on the plan effective date runs contrary to this principle.

Defendants ask as well that the class be limited to those plan participants who were active employees both on December 31, 1996 and after January 1, 1998.  Defendants provide no legal argument to justify this restriction.  As the Eleventh Circuit noted in Hipp, at this first stage, the Court applies a lenient standard.  Hipp, 252 F.3d at 1218.  Defendants have not explained to this Court why Plaintiffs should be required to impose this additional condition.  This Court approves Plaintiffs' proposed definition of the group to receive notice, as articulated above.

As to the form of the notice itself, Plaintiffs have submitted a proposed notice, and Defendants have made a number of objections.  The Court approves Plaintiffs' proposed notice ("PN") (Docket Entry No. 301-3) with the following modifications:

1. On PN page 1, the wording of the definitions of the class (both in the first paragraph, following "TO:," and in the section under the heading "Composition of the Age Discrimination Class") must be revised so that they accurately reflect the definition that the Court has approved, as stated in the body of this Opinion.

2. On PN page 1, the phrase "This Notice is to inform you about a class action lawsuit . . ." is changed to "This Notice is to inform you about a pending lawsuit. . ."

3. On PN page 1, the phrase "and to obtain double damages for willful violations of the ADEA" is deleted.

4. On PN page 2, Plaintiffs may not include the paragraph referring to a website.  All communications between potential class members and counsel must be both rigorously monitored by the Court and documented in a record.  Website communications do not meet these requirements.

5. This Court agrees with Defendants that this wording on PN page 2 could be misleading: "This means that even if the Plaintiffs win on their age discrimination claims, you will <u>not</u> receive any additional pension benefits or other relief." Plaintiffs must revise the wording to reduce the potential for leading readers to believe that they must join the suit in order to receive any pension benefits.

6. Plaintiffs may not give notice through newspaper advertisements or internet communications. Because Defendants will provide names and addresses of virtually all potential group members, broad solicitations are neither needed nor appropriate.

7. Plaintiffs have agreed to the bear the cost of updating the mailing list, and to modify the instructions for mailing and filing the opt-in forms so that originals of all consents are filed with the Clerk of the Court, in accordance with 29 U.S.C. § 216(b).

## **CONCLUSION**

For the reasons stated above, Plaintiffs' motion for conditional approval of ADEA collective action and authorization of notice to the class, subject to the modifications and conditions specified in the body of this Opinion, is **GRANTED.**

    s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

Dated: May 24, 2007