<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | |
| PHILLIP C. ENGERS, WARREN J. : | |
| MCFALL, DONALD G. NOERR, : | |
| and GERALD SMIT, individually and on : | |
| behalf of all others similarly situated, : | |
| : | |
| Plaintiffs, : | Civil Action No. 98-3660 (SRC) |
| : | |
| v. : | |
| : | **OPINION** |
| AT&T, INC., AT&T PENSION BENEFIT : | |
| PLAN, and AT&T PUERTO RICAN : | |
| PENSION BENEFIT PLAN, : | |
| : | |
| Defendants. : | |
| _____: | |

<u>**CHESLER**</u>, **U.S.D.J.**

This matter comes before the Court on three motions: 1) the motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, by Defendants AT&T, Inc., AT&T Pension Benefit Plan, and AT&T Puerto Rican Pension Benefit Plan (collectively, "Defendants"); 2) the motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, by Plaintiffs Phillip C. Engers, Warren J. McFall, Donald G. Noerr, and Gerald Smit (collectively, "Plaintiffs"); and 3) Defendants' motion for partial summary judgment or, in the alternative, for decertification of class. For the reasons set forth below, Defendants' motion for summary judgment will be granted in its entirety, and the two motions for partial summary judgment will be denied as moot.

## BACKGROUND

This case arises out of disputes over an AT&T Pension Plan (the "Plan").  The background to this case has been stated in previous Opinions and will not be repeated here. Defendants have moved for summary judgment on the First, Second, Fourth, Fifth, Tenth and Twelfth Claims.  Plaintiffs have moved for partial summary judgment on the Fourth, Fifth, Tenth and Twelfth Claims.  Defendants have also moved, in the alternative, for partial summary judgment on the claims of certain opt-in plaintiffs.

## APPLICABLE LEGAL STANDARDS

### I.    Motion for summary judgment

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury

could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

3

immaterial." <u>Katz v. Aetna Cas. & Sur. Co.</u>, 972 F.2d 53, 55 (3d Cir. 1992) (quoting <u>Celotex</u>, 477 U.S. at 322-23).

## ANALYSIS

**I.      Summary judgment on the First and Second Claims**

AT&T moves for summary judgment on the First and Second Claims in the Fourth Amended Complaint, for discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA").

The gist of the First Claim in the Fourth Amended Complaint is that the "greater of" transition mechanism[1] in the provisions of the cash balance Plan "discriminates on the basis of age by providing that older workers who are eligible for early retirement earn no additional benefits under the cash balance plan in the current year, the near-term and the long-term." (Fourth Am. Compl. ¶ 40.)  The First Claim alleges that this violates the ADEA, 29 U.S.C. §§ 623(a) and 626(b).

---

[1] When AT&T converted its traditional defined benefit pension plan into a cash balance plan, it established new cash balance accounts for all employees.  These accounts contained opening balances derived in part from the benefits accrued in the traditional plan.  At the same time, the prior plan benefit was frozen.  Plaintiffs' expert, Dr. Bardwell, explained the "greater of" mechanism as follows:

> For many employees, the opening value of the cash balance plan was substantially lower than the value of the prior plan benefit. . . Employees retiring after the transition would receive the benefit derived from the higher of the two formulas. This type of transition plan is denoted a "greater-of" plan.  Since the cash balance plan account was lower for many employees, it would not be used in computing the actual benefit until it caught up.  This "greater of" transition results in a period of years during which the value of the actual retirement benefit ceases to grow at all.  This phenomenon is called "wear-away."

(Bruce Cert. Ex. 53 at 4.)

The factual allegations underlying the Second Claim in the Fourth Amended Complaint are quite similar and are based on the assertion that the application of the "greater of" mechanism discriminates on the basis of age. (Fourth Am. Compl. ¶¶ 51-53.) The parties have briefed the First and Second Claims together and apply the same arguments to both claims; neither party distinguishes between the claims, which will be discussed together in this Opinion. Both claims focus on the effects of the "greater of" mechanism on the earning of benefits during the wear-away period. While the First Claim specifies the ADEA provision at issue, the Second Claim alleges violation of the ADEA, but specifies no provision. (Fourth Am. Compl. ¶ 56.)

The parties do not dispute that ADEA § 4, entitled "Prohibition of age discrimination," contains the statutory provisions at issue. While Defendants contend that compliance with ADEA § 4(i) provides a complete defense to any claim for violation of § 4 related to benefit accruals, Plaintiffs assert that this is not so. In support, Plaintiffs point to some legislative history, S. Rep. No. 101-263, at 1525 (1990), previously cited by this Court in the Opinion of March 29, 2007. This legislative history does not help Plaintiffs, since it merely states that, should there be a circumstance in which the provisions of § 4(i) are inapplicable, claims may be resolved under § 4(f)(2). Plaintiffs have not demonstrated that the provisions of § 4(i) are inapplicable, nor have they invoked § 4(f)(2). Plaintiffs also offer a footnote that cites three cases without discussion: Ky. Ret. Sys. v. EEOC, 554 U.S. 135 (2008); Lockheed Corp. v. Spink, 517 U.S. 882 (1996); and Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993). None of these cases is on point. As this Court has previously stated: "The meaning of § 4(i) is plain and unambiguous: if a plan complies with § 4(i), it complies with all benefit accrual requirements in § 4." (Opinion of March 29, 2007 at 4.)

5

The parties do not dispute that both the First and Second Claims relate to benefit accruals. Thus, while the First Claim alleges violation of § 4(a), and the Second Claim does not specify a provision, judgment must be entered in favor of Defendants if the Plan complies with the requirements of ADEA § 4(i).  The relevant test in this provision states:

> (1) Except as otherwise provided in this subsection, it shall be unlawful for an employer, an employment agency, a labor organization, or any combination thereof to establish or maintain an employee pension benefit plan which requires or permits--
>> (A)    in the case of a defined benefit plan, the cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual, because of age. . .

Passing this test becomes a complete defense to any claim of violation of § 4 (relating to benefit accruals) because of § 4(i)(4), which states: "Compliance with the requirements of this subsection with respect to an employee pension benefit plan shall constitute compliance with the requirements of this section relating to benefit accrual under such plan."

AT&T seeks summary judgment on the ADEA claims on the theory that the Plan's compliance with § 4(i) provides a complete defense to any claim under § 4.  AT&T bears the burden of proof of this defense at trial.  At summary judgment, then, AT&T must present evidence of compliance with § 4(i), such that no reasonable jury could find in favor of Plaintiffs. AT&T first points to the method for establishing the initial cash balance accounts for Plan members.  (Defs.' 56.1 Stmt. ¶ 52.)  This method provided that the initial credit to a participant's cash balance account would be the product of the participant's monthly special update benefit and a conversion factor based on age.  (Id.)  Plaintiffs agree that the conversion factors increased with age.  (Pls.' 56.1 Stmt. ¶ 52.)  AT&T next points to the method for adding annual pay and interest credits to the cash balance accounts.  (Defs.' 56.1 Stmt. ¶ 53.)  The method for

6

computing pay credits utilized compensation percentages which increased with age.  (Id. at ¶ 54, 55.)  Plaintiffs admit that the pay credit percentages increase with age.[2]  (Pls.' 56.1 Stmt. ¶ 54, 55.)  Defendants have pointed to sufficient evidence to persuade a reasonable jury that the Plan complies with the requirements of § 4(i), in that there is neither "cessation of an employee's benefit accrual, or the reduction of the rate of an employee's benefit accrual, because of age."  29 U.S.C. § 623(i)(1)(A).

The burden then shifts to Plaintiffs to offer evidence that raises a material factual dispute. Plaintiffs contend that Dr. Bardwell's two expert reports raise a genuine issue of fact as to compliance with § 4(i).  (Pls.' Exs. 53, 54.)  Dr. Bardwell's reports do not accomplish what Plaintiffs contend, since they do not provide evidence that the Plan ceases benefit accrual or reduces the rate of benefit accrual because of age.  In the first report, Dr. Bardwell performed two kinds of analyses.  (Pls.' Ex. 53.)  First, he looked at the duration of the wear-away period and concluded that "the age of employees has a strong impact on the existence and length of wear-away."  (Id. at 8.)  Next, he looked at benefits lost due to the plan conversion and concluded that older employees lost greater amounts of future retirement benefits than younger employees.  (Id. at 12.)  The second report presents further evidence related to these points.  (Pls.' Ex. 54.)

These analyses fail to address the subject matter of § 623(i)(1)(A), which is the rate of benefit accrual.  In Register v. PNC Fin. Servs. Group, Inc., 477 F.3d 56, 68 (3d Cir. 2007), the

---

[2] It is worth noting Plaintiffs' response to factual statement ¶ 55: "Admitted, except that when the pay credits are translated to monthly retirement benefits, younger employees received higher monthly benefits than employees over age 55."  This contains the issues in a nutshell.  As will be discussed in detail below, Plaintiffs' argument looks at age differences in the output of benefits from the Plan, whereas § 4(i) looks at inputs into the plan, and it appears to be undisputed that, as to the inputs into the Plan, the rate of accrual is not reduced because of age.

Third Circuit construed the ERISA counterpart to 29 U.S.C. § 623(i)(1)(A), which is 29 U.S.C. § 1054(b)(1)(H)(i).[3]  The Court examined the analysis of benefit accruals and held that one must distinguish the benefits that are inputs to a plan from the benefits that are outputs from a plan: "the 'accrual' of 'benefit' in section 1054(b)(1)(H)(i) refers to the credits deposited into the participant's cash balance accounts, i.e., the inputs." Id.  Thus, following Register, 29 U.S.C. § 623(i)(1)(A) refers to the benefit accrual that is the input to a plan.  Dr. Bardwell did not analyze inputs to the Plan.  The wear-away period is neither an input nor an output, but a higher-level construct derived from output functions of the Plan.  Lost benefits are outputs.  Dr. Bardwell's analyses are not relevant evidence of benefit accrual, within the meaning of 29 U.S.C. § 623(i)(1)(A).  Defendants have presented evidence demonstrating that the Plan complies with § 4(i), and Plaintiffs have failed to present evidence that raises a material factual dispute.

Plaintiffs' ADEA case centers on the operation of the "greater of" mechanism, which produces the phenomenon of the wear-away period.  Plaintiffs have presented no evidence, however, that the "greater of" mechanism has any effect on the benefit accrual that is the input to the Plan.  Rather, the undisputed evidence shows that, during the wear-away period, employees accrue benefits in their cash balance accounts continuously.  Were this not the case, the wear-away period would never end.  Plaintiffs have not shown that benefit accrual ceased, nor that its rate was reduced because of age.  As to the First and Second Claims, for violation of ADEA § 4, Defendants have offered evidence that the Plan complies with § 4(i) and Plaintiffs have not presented evidence which raises a question as to any material fact related to compliance with §

---

[3] See Hurlic v. S. Cal. Gas Opinion Co., 539 F.3d 1024, 1036 (9th Cir. 2008) ("Congress has made clear that the provisions should be interpreted to have an identical meaning.")

4(i).  Defendants have succeeded in proving compliance with § 4(i).  Pursuant to § 4(i)(4), this constitutes compliance with all requirements of  § 4 with regard to benefit accruals.  Because the First and Second claims relate to benefit accruals, Defendants have shown that they are entitled to judgment as a matter of law.  Plaintiffs have failed to defeat Defendants' motion for partial summary judgment on the ADEA claims.  As to the First and Second Claims, Defendants' motion for partial summary judgment will be granted.

This outcome makes sense because it is clear that it is the Plan outputs that stop increasing during the wear-away period, not the inputs, and Register requires that this analysis be done on the inputs.  This outcome also fits with the fact that, in 2006, Congress acted to deal with the issue of wear-away periods when it enacted the Pension Protection Act of 2006, which prohibited them.  The legislative history for this Act states:

> During the 1990s, conversions of traditional defined benefit pension plans to cash balance formulas were common among mid- to large-size employers. There was considerable media attention regarding such conversions, particularly in cases in which the plan contained a "wearaway" or in which older or longer-service employees close to retirement were denied the opportunity to continue to accrue benefits under the old plan formula. While perhaps complying with the law, such plan designs were viewed by many as unfair to certain participants. There was concern that some employers were adversely affecting participants in order to reduce costs.

Staff of the J. Comm. on Taxation, Description of Revenue Provisions Contained in the President's Fiscal Year 2007 Budget Proposal; IV. Provisions Related to the Employer-Based Pension System, JCS- 1-06 NO 5, 2006 WL 4791612 (I.R.S.)  This confirms that Congress enacted the provisions prohibiting wear-away transition periods in 2006 because of the

perception that such provisions were unfair but might comply with existing law.[4]

## II.    Summary judgment on the Fourth and Fifth Claims

AT&T moves for summary judgment on the Fourth and Fifth Claims in the Fourth Amended Complaint.  Although these claims assert violation of ERISA sections 402, pertaining to the written instrument requirement, and 404, pertaining to fiduciary duties, this Court has construed them as claims for benefits under the Plan.  Engers v. AT&T, 428 F. Supp. 2d 213, 226 (D.N.J. 2006) ("Plaintiffs' Fourth and Fifth Claims actually arise under § 502(a)(1)(B).")  This recasts these claims as claims for benefits that have been denied by the Plan, with the Court serving to review the decision by the AT&T Employee Benefits Committee ("Committee") to deny benefits.

Defendants contend that the Committee's decision should be reviewed under an abuse of discretion standard, pursuant to Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), because the Plan gave the Committee the discretionary authority determine eligibility and interpret Plan provisions.  Defendants argue that the Committee did not abuse its discretion in denying benefits.

Plaintiffs do not dispute that the Committee was authorized to interpret all Plan provisions, but argue that the relevant provisions were not properly part of the Plan, because the Plan was not amended in compliance with the requirements of ERISA § 402(b)(3).  This is an entirely new legal theory.  It is neither expressed nor implied in the Fourth Amended Complaint,

---

[4] See also Sunder v. U.S. Bancorp Pension Plan, 586 F.3d 593, 601 (8th Cir. 2009) ("[W]e note that prior to the Pension Protection Act of 2006, courts had interpreted ERISA to permit a wear-away provision in which a plan amendment was allowed to freeze the accrued benefits and not permit any additional accumulation of benefits until the new cash balance exceeded the benefits under the old plan.")

10

nor in the brief seeking to supplement the Third Amended Complaint, nor in the Order that amended it.

The history, in brief, of the Fourth and Fifth Claims is as follows.  As stated above, in 2006, this Court construed the claims as claims for benefits under the Plan, and held that, as such, they were subject to an exhaustion requirement and ordered them dismissed without prejudice.  Engers, 428 F. Supp. 2d at 231 ("These claims are dismissed without prejudice to be re-filed once Plaintiffs have exhausted their administrative remedies.")  On March 2, 2007, Plaintiffs sought leave to supplement the pleadings to allege the facts pertaining to their exhaustion of administrative remedies.  (Docket Entry No. 317.)  On October 17, 2007, this Court entered a Consent Order reinstating the Fourth and Fifth Claims and granting leave to supplement the pleadings to assert allegations regarding exhaustion of administrative remedies. (Docket Entry No. 354.)  There is nothing in that Consent Order, nor in Plaintiffs' moving papers, that indicates that Plaintiffs were advancing the theory that the Committee had acted improperly because of failure to comply with the requirements of ERISA § 402(b)(3).  That would have been the time to seek to amend the Complaint to assert this theory.  Now, over three years after filing the motion to supplement, Plaintiffs seek to defeat a motion for summary judgment with a novel theory.  Defendants would suffer substantial prejudice were this Court to accept this new theory, and it will not be allowed.  This leaves Plaintiffs with no opposition to Defendants' motion.[5]  Rather, as Defendants contend, this leaves Plaintiffs arguing for a claim not asserted in their Complaint.

_____

[5] Nor do Plaintiffs stray from this path in arguing their motion for partial summary judgment on the Fourth and Fifth Claims, which presents only their ERISA § 402(b)(3) argument.

11

It is apparent that counsel for Plaintiffs are experienced litigators in federal court.[6]

Such experienced attorneys know well how to draft pleadings and how to amend them so as to

articulate the claims they wish to pursue.  "A plaintiff may not amend his complaint through

arguments in his brief in opposition to a motion for summary judgment."  Bell v. City of

Philadelphia, 275 Fed. Appx. 157, 160 (3d Cir. 2008) (quotation omitted).

Plaintiffs bear the burden of proof at trial of the Fourth and Fifth Claims.  At summary

judgment, Defendants may meet their initial burden by pointing to the absence of evidence to

support Plaintiffs' case.  Defendants have done so.  The burden then shifts to Plaintiffs to present

evidence sufficient to support their case.  Plaintiffs have failed to do so, and, as to the Fourth and

Fifth Claims, Defendants' motion for summary judgment will be granted.

## III.    Summary judgment on the Tenth Claim

Defendants move for summary judgment on the Tenth Claim.  Plaintiffs' brief in

opposition makes a few jabs at Defendants' legal arguments, but never comes to grips with its

burden under Rule 56(e), which states:

> (2) *Opposing Party's Obligation to Respond.* When a motion for summary
> judgment is properly made and supported, an opposing party may not rely merely
> on allegations or denials in its own pleading; rather, its response must--by
> affidavits or as otherwise provided in this rule--set out specific facts showing a
> genuine issue for trial. If the opposing party does not so respond, summary
> judgment should, if appropriate, be entered against that party.

Plaintiffs have failed to set out specific facts showing a genuine issue for trial.

At issue is ¶ 88A in the Tenth Claim, which alleges that the amended Plan violates 29

U.S.C. § 1054(b)(1)(B).  This provision, known as the "133 1/3% rule," states:

---

[6] As this Court determined when granting Plaintiffs' motion for class certification.

(B) A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year. For purposes of this subparagraph--

> (i) any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years;

> (ii) any change in an accrual rate which does not apply to any individual who is or could be a participant in the current year shall be disregarded;

> (iii) the fact that benefits under the plan may be payable to certain employees before normal retirement age shall be disregarded . . .

Although the analysis of whether a plan satisfies the requirements of the 133 1/3% rule may be complex, the burden on a plaintiff alleging violation of this provision can be summed up simply: the plaintiff must show that the annual rate at which a participant can accrue benefits in a particular year is more than 133 1/3% of any prior year's annual rate.[7]

Defendants move for summary judgment with two principal arguments.  First, Defendants assert that the claim in ¶ 88A is predicated on the existence of the wear-away period, that the phenomenon of the wear-away period is due entirely to early retirement benefits, and that 29 U.S.C. § 1054(b)(1)(B)(iii) specifically requires that early retirement benefits must be disregarded when applying the 133 1/3% rule.  Second, Defendants contend that Plaintiffs' evidence of violation is legally insufficient, given the Third Circuit's decision in Register.  In brief, Defendants argue that Register requires that, to show a violation of the 133 1/3% rule, Plaintiffs must calculate the accrual history as if the cash balance plan had been effect for all

---

[7] See Esden v. Bank of Boston, 229 F.3d 154, 167 n.18 (2d Cir. 2000) ("That test requires that the value of the benefit accrued in any year may not exceed the value of a benefit accrued in any previous year by more than 33%.")

years, and that Plaintiffs' evidence does not meet this requirement.

Plaintiffs' response in opposition is short, less than four pages of their brief.  In these four pages, Plaintiff's only comment about <u>Register</u> is this statement: "*Register* does not address the requirement that the benefits earned in the plan year must be 'payable.'" (Pls.' Opp. Br. 45.) This sentence is insufficient to persuade this Court that the requirements of <u>Register</u> do not apply here.

Plaintiffs next point to evidence in which accrued benefits have been calculated in compliance with the plan amendment rule.  The opposition brief cites ¶ 126 in Plaintiff's Statement of Additional Facts, which points to Exhibit E of the Poulin Declaration of October 3, 2003, and Exhibit C of the Sher Report.  Exhibit C of the Sher Report supports Defendants' position.[8]  (Pls.' Ex. 3.)  Exhibit E, however, does not show noncompliance with the 133 1/3% rule, in view of the plan amendment rule.  (Pls.' Ex. 1.)  Rather, Mr. Poulin's declaration explains Exhibit E as follows:

> The average reduction in the rate of benefit accrual as a result of the conversion to a cash balance plan was 15% for all ages combined.  Plan participants between the ages of 55 and 65 experienced a 20% reduction in their benefit accrual rates.  The benefit accrual rate of 1.04% at age 65 represented a 35% reduction compared to the 1.6% benefit accrual rate under the previous version of the plan.  Exhibit E graphs the same reductions.

(Pls.' Ex. 1 at ¶ 17.)  Exhibit E does not present a calculation of the benefit accrued in each plan year, with the calculations performed in compliance with the plan amendment rule.  Instead, Exhibit E compares benefit accrual rates under the old and new plans.

---

[8] In Exhibit C, Mr. Sher calculates benefit accrual rates using only the accrual methods of the amended Plan.  He observes that the ratio of the highest rate to the lowest rate is less than 133 1/3%.  (Pls.' Ex. 55 at 32.)

14

The reference to Exhibit E appears to be a typo; Exhibit D appears to show Mr. Poulin's calculations of benefit accrual rates in compliance with the plan amendment rule.  Exhibit D does not, however, show noncompliance with the 133 1/3% rule.  Instead of showing backloading, prohibited by the rule, it shows frontloading: the accrual rates in column 9 decrease steadily over a participant's life span.  (Pls.' Ex. 1 at Ex. D.)  Nor do Plaintiffs assert that Exhibit D demonstrates a violation of the 133 1/3% rule.

Nor does Mr. Poulin's declaration provide admissible, relevant evidence to support Plaintiffs' position.  (Pls.' Ex. 1.)  Mr. Poulin makes his arguments regarding the 133 1/3% rule in ¶ 34.  In brief, he alleges a zero benefit accrual rate during the wear-away period, and a non-zero benefit accrual rate after the end of the wear-away period, and observes that the ratio of these rates is infinity, which exceeds 133 1/3 %.  As Defendants point out, the problem with this argument is that the calculation of a zero benefit accrual rate during the wear-away period does not comply with the plan amendment rule.  The wear-away period is a phenomenon that comes into existence only when the plan amendment rule is not followed: it depends entirely on a calculation (the "greater of" mechanism) that mixes accrual methods from the old and new plans.

Register appears to be on all fours with the instant case.  Register involved a conversion of a defined benefit plan to a cash balance plan.  477 F.3d at 59.  The conversion entailed a similar "greater of" mechanism to that at issue here:

> When PNC converted its traditional plan to a cash balance plan, the early
> retirement benefits of the old plan were frozen and the participants were given the
> option of either receiving the accrued (but frozen) early retirement benefits or the
> benefit they would have accrued under the cash balance plan, whichever was
> greater. The benefits for those participants that chose to receive the accrued early
> retirement benefits were frozen from the date of conversion until their account
> balances under the cash balance plan exceeded the accrued early retirement

benefits.

Id. at 60.  Plaintiffs sued with a claim, *inter alia*, asserting that the amended plan violated 29 U.S.C. § 1054(b)(1)(B) "because the participants that chose to retain the accrued (but frozen) early retirement benefits did not receive additional benefit accruals until the cash balance plan benefit caught up to their frozen prior plan benefit."  Id. at 61.  This appears to be exactly what Mr. Poulin has argued in regard to the 133 1/3% rule.

The plaintiffs in Register thus appear to have made exactly the same argument made by Plaintiffs here, that the zero benefit accruals during the wear-away period, followed by the non-zero benefit accruals after the end of the wear-away period, must violate the 133 1/3% rule.  See id. at 71.  The Third Circuit rejected this argument, citing the plan amendment provision in 29 U.S.C. § 1054(b)(1)(B)(i).  The Third Circuit stated this rationale:

> [O]nce there is an amendment to the prior plan, only the new plan formula is relevant when ascertaining if the plan satisfies the 133 1/3% test. A participant's election to retain his early retirement benefits from the old plan is not relevant to this calculation. If we treat the amended plan as in effect for all other plan years, as Congress directs us to do, appellants never would have accrued a benefit under the old plan and would have started to accrue benefits under the cash balance formula from the beginning of their employment. Accordingly, there is no violation of the anti-backloading provisions under appellants' aggregate-formula theory.

Id. at 72.

Plaintiffs' only attempt to distinguish Register is their observation that the Third Circuit did not address the requirement that the benefits be payable.  This is true but, in view of the fact that the Register Court applied the identical statutory provision to a factual scenario that appears indistinguishable from the instant case, this Court concludes that Register requires a rejection of Plaintiffs' position.  Defendants have persuaded that Register is controlling authority, and that it

16

establishes that Plaintiffs' calculations involving wear-away periods do not comply with the plan amendment rule.  Defendants have shown that Plaintiffs' evidence, which involves wear-away periods, is therefore legally insufficient.

Plaintiffs have not pointed to evidence that raises a factual issue about whether the amended Plan, evaluated as the plan amendment rule requires, satisfies the 133 1/3% rule.  The undisputed evidence of record is presented in the report of Mr. Sher, which demonstrates that the amended Plan satisfies the 133 1/3% rule.  As to the Tenth Claim, Plaintiffs have failed to defeat Defendants' motion for summary judgment, and the motion will be granted.

**IV.   Summary judgment on the Twelfth Claim**

Defendants move for summary judgment on the Twelfth Claim.  At issue is ¶ 94A, which states, in pertinent part:

> [T]he 6% per year reductions to the undiscounted age 55 annuity violate Treasury Regulation 1.411(a)-11(a)(2) [which] expressly provides that a distribution option to a "subsidized early retirement benefit" must offer at least the actuarial equivalent of the subsidized benefit. . . . AT&T's 6% per year reduction to the undiscounted age 55 benefit violates this rule because it exceeds a reasonable actuarial reduction.

There are no disputes about the essential facts.  The parties agree that  ¶ 94A refers to Plan § 4.06(a)(ii)(A)(2), which offers participants with less than 30 years of service the option of receiving the Plan's unreduced early retirement benefits before age 55, but with a reduction of one half percent for each month that the participant is shy of age 55.

The relevant section of the Treasury Regulations states:

§ 1.411(a)-11 Restriction and valuation of distributions.

(a) Scope -- (1) In general. Section 411(a)(11) [26 USCS § 411(a)(11)] restricts the ability of a plan to distribute any portion of a participant's accrued benefit

without the participant's consent. Section 411(a)(11) [26 USCS § 411(a)(11)] also restricts the ability of defined benefit plans to distribute any portion of a participant's accrued benefit in optional forms of benefit without complying with specified valuation rules for determining the amount of the distribution. If the consent requirements or the valuation rules of this section are not satisfied, the plan fails to satisfy the requirements of section 411(a) [26 USCS § 411(a)].

(2) Accrued benefit. For purposes of this section, an accrued benefit is valued taking into consideration the particular optional form in which the benefit is to be distributed. The value of an accrued benefit is the present value of the benefit in the distribution form determined under the plan. For example, a plan that provides a subsidized early retirement annuity benefit may specify that the optional single sum distribution form of benefit available at early retirement age is the present value of the subsidized early retirement annuity benefit.  In this case, the subsidized early retirement annuity benefit must be used to apply the valuation requirements of this section and the resulting amount of the single sum distribution. However, if a plan that provides a subsidized early retirement annuity benefit specifies that the single sum distribution benefit available at early retirement age is the present value of the normal retirement annuity benefit, then the normal retirement annuity benefit is used to apply the valuation requirements of this section and the resulting amount of the single sum distribution available at early retirement age.

26 C.F.R. § 1.411(a)-11.

Plaintiffs bear the burden of proof on the Twelfth Claim at trial.  At summary judgment, as the moving party not bearing the burden of proof, Defendants contend that they are entitled to judgment as a matter of law because Treasury Regulation 1.411(a)-11(a)(2) does not impose the requirement asserted by Plaintiffs in ¶ 94A.  Plaintiffs do not contest that this dispute involves a purely legal issue; there are no factual disputes that preclude the resolution of this dispute by the Court as a matter of law.  As such, the burden shifts to Plaintiffs to prove their claim.

In 2007, this Court denied a motion for judgment on the pleadings as to this claim.  In denying that motion, this Court stated:

It is true that ¶ 94A mischaracterizes the meaning of 26 C.F.R. § 1.411(a)-11(a)(2): the regulation does not, as ¶ 94A implies, require that every

18

> distribution option for a subsidized early retirement benefit must be the actuarial
> equivalent of the subsidized benefit.

(Opinion of January 3, 2007 at 11.)  This Court then observed that "[t]he gist of ¶ 94A is that the

6% reductions violate 26 C.F.R. § 1.411(a)-11(a)(2)," and that Defendants had failed to show

entitlement to judgment on the pleadings.  (Id. at 12.)  Furthermore, this Court stated that

"Plaintiffs have not explained how their actuarial equivalence contentions have a basis in 26

C.F.R. § 1.411(a)-11(a)(2)."  (Id.)  Now, at summary judgment, Plaintiffs must show that the 6%

reductions violate 26 C.F.R. § 1.411(a)-11(a)(2).  Plaintiffs have not done so.

To begin with, the section of Plaintiffs' brief in opposition to the motion for summary

judgment is just slightly over two pages long.  In that section, Plaintiffs: 1) pick a bone with

Defendants about the specific statutory section implicated by 26 C.F.R. § 1.411(a)-11(a)(2); 2)

critique Defendants' interpretation of the regulation; and 3) make a one-sentence reference to

Plaintiffs' motion for partial summary judgment on this claim.  Were it not for this reference to

Plaintiffs' motion for partial summary judgment, Plaintiffs' brief in opposition would fail

completely to meet their summary judgment burden.

Plaintiffs' brief in support of its motion for partial summary judgment on the Twelfth

Claim gives a more extensive exposition of Plaintiffs' case but, nonetheless, fails to persuade

that the 6% reductions violate 26 C.F.R. § 1.411(a)-11(a)(2).  Plaintiffs state their main legal

argument in their first subheading: "Treasury Regulations at 1.411(a)-11(a) Provide that an

Option to a Subsidized Early Retirement Benefit Must Offer the Present Value of that Benefit."

(Pls.' PSJ Br. 30.)  Furthermore, Plaintiffs contend that a participant's early retirement benefit

options, which vary according to the years prior to age 55 at time of commencement, must be

actuarial equivalents.  (Id. at 37.)

Plaintiffs' argument depends on proving two propositions: 1) Treas. Reg. 1.411(a)-11(a) requires that all optional forms of an early retirement benefit must be of actuarially equivalent value; and 2) the age 54 early retirement benefit, for example, is an optional form, within the meaning of Treas. Reg. 1.411(a)-11(a), of the age 55 early retirement benefit.  Plaintiffs do not succeed in proving either proposition.

As to the first proposition – that Treas. Reg. 1.411(a)-11(a) requires that all optional forms of an early retirement benefit must be of actuarially equivalent value – the problem for Plaintiffs is that such a requirement does not appear on the face of either subsection 1.411(a)-11(a)(2), nor on the face of the entire Treas. Reg. 1.411(a)-11(a).[9]  As quoted above, the operative language in subsection 1.411(a)-11(a)(2) states:

> For purposes of this section, an accrued benefit is valued taking into consideration the particular optional form in which the benefit is to be distributed. The value of an accrued benefit is the present value of the benefit in the distribution form determined under the plan.

This language states no equivalence requirements.  The remaining language in subsection 1.411(a)-11(a)(2) provides two examples.  These examples do not prove the proposition that needs to be proven, because both merely state which "benefit is used to apply the valuation requirements of this section."  The examples do not state what those valuation requirements are. This Court is thus left with key questions: what are the applicable valuation requirements? Where is actuarial equivalence between optional forms mandated?[10]

_____

[9] In fact, the word "actuarial" appears nowhere in 26 C.F.R. § 1.411(a)-11.

[10] This is the $64,000 question for Plaintiffs' ¶ 94A case.  Plaintiffs never answer it.

Section 1.411(a)-11(a)(1), subtitled "In general," gives helpful background for understanding subsection (2), which follows it.  It observes that these regulations relate to a section of ERISA which imposes two kinds of restrictions on plans: 1) restrictions imposing certain participant consent rules on certain distributions; and 2) restrictions requiring distributions of an accrued benefit in an optional form of benefit to meet valuation rules. Paragraph 94A of the Fourth Amended Complaint alleges violations of the valuation rules, not the consent rules.

The second subsection, as discussed, also refers to the valuation rules, but does not state what they are.  Rather, subsection (2) only states how a particular accrued benefit must be valued, when it is considered in the context of these valuation rules.  Plaintiffs never fill in this hole in their case, the source of the valuation rules which require the actuarial equivalence they assert.

On page 38 of their opposition brief, Plaintiffs offer a one-paragraph explanation for their assertion that actuarial equivalence is required by Treas. Reg. 1.411(a)-11(a)(2).  This paragraph, which attempts to combine a definition from "Roberts' Dictionary of Industrial Relations" with subsection (2), does not need extensive analysis.[11]  No argument can get around the fact that subsection (2) points elsewhere – outside itself –  to the "valuation requirements of this section." The way to show what these valuation requirements are – and to show that they require actuarial equivalence – is to cite them specifically.  Plaintiffs have not done so.

Nor do Plaintiffs prove the second proposition – that the age 54 early retirement benefit, for example, is an optional form, within the meaning of Treas. Reg. 1.411(a)-11(a), of the age 55

---

[11] Nor does footnote 18 to this paragraph, which rewrites the regulation using the phrase "an optional annuity with an earlier commencement date," need much comment.  In short, rewriting regulations is not a convincing way to demonstrate their meaning.

early retirement benefit.  Plaintiffs' ¶ 94A case only gets traction by characterizing the early

retirement benefit option available to a participant before age 55 as an optional form of benefit

that is not equivalent in value to the early retirement benefit available at age 55.  Yet Plaintiffs

have failed to show a legal basis for the proposition that an age 54 early retirement benefit is an

optional form of an age 55 early retirement benefit.  Clearly, a participant may have these two

options.[12]  It remains to be proven, however, that these are two forms of one benefit.

Resolution of this question turns on the issue of how broadly to construe "optional form

of benefit," within the context of this Regulation: does it include every option regarding benefits

available to a participant, or only some?  Plaintiffs fail to persuade that an age 54 early retirement

benefit and an age 55 early retirement benefit are alternative forms of a single benefit.

Plaintiffs make their case for this point by citing a definition of "optional form of benefit"

in a different Treasury Regulation, 1.411(d)-3:

> (ii) Optional form of benefit -- (A) In general. The term optional form of benefit
> means a distribution alternative (including the normal form of benefit) that is
> available under the plan with respect to an accrued benefit or a distribution
> alternative with respect to a retirement-type benefit. Different optional forms of
> benefit exist if a distribution alternative is not payable on substantially the same
> terms as another distribution alternative. The relevant terms include all terms
> affecting the value of the optional form, such as the method of benefit calculation
> and the actuarial factors or assumptions used to determine the amount distributed.
> Thus, for example, different optional forms of benefit may result from differences
> in terms relating to the payment schedule, timing, commencement, medium of
> distribution (e.g., in cash or in kind), election rights, differences in eligibility
> requirements, or the portion of the benefit to which the distribution alternative
> applies.

---

[12] It is worth noting, however, that a particular participant never has these two options as
alternatives at a single point in time.  At age 54, the participant cannot exercise a choice for the
age 55 benefit; at age 55, the participant cannot exercise a choice for the age 54 benefit.  These
are never true alternatives at a single point in time.

26 C.F.R. § 1.411(d)-3(g)(6).  Yet the crucial language in this definition is that "different optional forms of benefit *may* result from differences in terms" (italics added).  This definition, if applicable, does not mandate the conclusion that the age 54 early retirement benefit must be an optional form of the age 55 early retirement benefit.  It merely allows that it may be.  The paragraph which immediately precedes this definition, however, suggests otherwise in circumstances like those at hand:

> (i) Early retirement benefit. The term early retirement benefit means the right, under the terms of a plan, to commence distribution of a retirement-type benefit at a particular date after severance from employment with the employer and before normal retirement age. *Different early retirement benefits result from differences in terms relating to timing.*

Id. (italics added).  The last sentence of this paragraph appears to squarely address the question at issue.  The options at issue concern early retirement benefits, and there are differences in terms relating to timing.  In such a situation, the benefits are <u>different</u> benefits.  They are not optional forms of the same benefit.

Plaintiffs provide no other arguments to support the proposition that the age 54 early retirement benefit, for example, is an optional form, within the meaning of Treas. Reg. 1.411(a)-11(a), of the age 55 early retirement benefit.  They have failed to persuade this Court that they are entitled to judgment as a matter of law.

Moreover, this Court finds an additional basis for rejecting Plaintiffs' position.  The subsection of the regulation at issue, Treas. Reg. 1.411(a)-11(a)(2), bears the title "Accrued benefit."  The principles it states concern the valuation of different forms of accrued benefits.  This Court finds that the reduced benefits at issue are not multiple optional forms of a single accrued benefit, for the following reasons.  First, a textual analysis turns on the meaning of the

23

word "accrue," which Black's defines as follows: "To come into existence as an enforceable claim or right."  Black's Law Dictionary (8th ed. 2004).  Under this definition, at age 54, employee X has not accrued the age 55 early retirement benefit, because an enforceable right to the age 55 early retirement benefit has not yet come into existence.  Such a right will not come into existence until employee X turns 55.  The early retirement benefit that employee X has accrued at age 54 is not an optional form of the same early retirement benefit that employee X has accrued at age 55.  Instead, it is a different benefit, because the enforceable right to it comes into existence at a different time.  The age 54 early retirement benefit is not an alternative "distribution form," within the meaning of § 1.411(a)-11(a)(2), of the age 55 early retirement benefit.  This analysis supports the finding that Plaintiffs have failed to prove their case.

Furthermore, subsection 1.411(a)-11(a)(2) gives two examples which support this understanding of the Regulation.  The examples are carefully worded such that the specified benefit forms are linked to a single, particular age.  The first example concerns a subsidized early retirement annuity benefit, and compares the value of an optional form of distribution – a single sum, or lump sum,"**<u>available at early retirement age</u>**."  Thus, in this example, when a participant has accrued the subsidized early retirement benefit, is at early retirement age, and is given the option of choosing between the distribution forms of an annuity benefit and a lump sum benefit, the values of these two distribution forms are subject to the valuation rules defined only by reference.  The first example does not involve a comparison of distribution forms at differing ages.

Although it is less detailed, the second example twice specifies that it is comparing the distribution "available at early retirement age" – again, using the valuation rules defined only by

reference – with the early retirement annuity benefit.  Again, the distributions that are compared are forms of a particular benefit available at one particular age – in this example, at early retirement age.  Benefits are not compared across ages.

Nor do the cases cited by Plaintiffs support their position.  The main case in which an appellate Court applied Treasury Regulation 1.411(a)-11(a)(2) is Costantino v. TRW, Inc., 13 F.3d 969, 979 (6th Cir. 1994).  Like the examples just discussed, Costantino compared a subsidized early retirement annuity benefit with an optional lump sum distribution form of that benefit.[13]  Id.  There was no comparison of benefits across ages.

In addition, when the Department of the Treasury issued 1.411(a)-11(a)(2) as a final regulation, it provided this commentary:

> A plan may have more than one optional form of benefit under which benefits may be paid. There is no requirement that each form of benefit be the actuarial equivalent of all other benefit forms.

53 Fed. Reg. 31837-03 at 31840 (August 22, 1988).  This comment supports this Court's understanding that, whatever the valuation rules referred to in subsection 1.411(a)-11(a)(2) may be, they do not mandate actuarial equivalence among options in general.

Lastly, this Court queries whether Plaintiffs' position can pass muster under the law of the case.  In 2002, this Court held: "the Court must conclude that the actuarially unreduced Special Update Benefit amount as paid by § 4.06(a)(ii)(A)(2) is not an accrued retirement benefit, but is instead a type of early retirement subsidy."  Engers v. AT&T, 2002 WL 32159586 at *7 (D.N.J.,2002).  Since this Court has held that the provision at issue in ¶ 94A, § 4.06(a)(ii)(A)(2),

---

[13] In regard to Treasury Regulation 1.411(a)-11(a)(2), Costantino stands for the proposition that, in the context of that regulation, the value of a participant's accrued early retirement benefit includes the subsidized portion of such benefits.  Id.

does not provide an accrued retirement benefit, it does not appear that this Court could find that this provision violates a regulation subsection titled "Accrued benefit" without finding itself ruling inconsistently.

Plaintiffs have proven neither of the two propositions that needed to be proven: 1) Treas. Reg. 1.411(a)-11(a) requires that all optional forms of an early retirement benefit must be of actuarially equivalent value; and 2) the age 54 early retirement benefit, for example, is an optional form, within the meaning of Treas. Reg. 1.411(a)-11(a), of the age 55 early retirement benefit.   Plaintiffs have failed to prove that the 6% reductions violate 26 C.F.R. § 1.411(a)-11(a)(2).  The claim in ¶ 94A fails as a matter of law.

As to ¶ 94A of the Twelfth Claim, Defendants have shown that they are entitled to judgment as a matter of law, and that no factual disputes preclude the entry of summary judgment.  Defendants' motion for summary judgment on this claim will be granted.

This Court will grant Defendants' motion for summary judgment in its entirety.  This resolves all outstanding claims in this case and moots Plaintiffs' motion for partial summary judgment, as well as Defendants' motion for partial summary judgment.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion for summary judgment is granted in its entirety, and Judgment shall be entered in Defendants' favor on the First, Second, Fourth, Fifth, Tenth, and Twelfth Claims.  Both Plaintiffs' motion for partial summary judgment and Defendants' motion for partial summary judgment are denied as moot.


                                           s/ Stanley R. Chesler
                                     Stanley R. Chesler, U.S.D.J.

Dated: June 7, 2010

27